Craig HALL, Individually and derivatively in the right of First Federal of Michigan, Plaintiff,

v.

James ALIBER; Donald H. Mitzel; Warren D. Couger; Paul Borman; Gerald J. DeNooyer; James L. Dingwall; Hans Gehrke, Jr.; Alfred R. Glancy, III; Charles M. Heidel; Philip J. Meathe; Henry R. Nolte, Jr.; Fred C. Reynolds; Ronald K. Seelhoff; Jervis C. Webb; Eresteen R. Williams; Max M. Fisher; Marjorie S. Fisher; Jane F. Sherman; Phillip W. Fisher; Mary D. Fisher; Julie Fisher Cummings; Marjorie Fisher Aronow; Martinique Hotel, Inc.; Salomon Brothers Inc., and First Federal of Michigan, a federally chartered capital stock Savings and Loan Association, Defendants.

No. 85-CV-72289-DT.

United States District Court, E.D. Michigan, S.D.

July 31, 1985.

Butzel, Keidan, Simon, Myers & Graham by Douglas G. Graham, Elliot A. Spoon, John Wm. Butler, Jr., Bruce L. Sendek, Detroit, Mich., Akin, Bump, Strauss, Hauer & Feld by David C. Musslewhite, Philip N. Smith, Jr., Margaret L. Vandervalk, Judith B. Baumgartner, Dallas, Tex., for plaintiff.

Bodman, Longley & Dahling by Theodore Souris, Charles N. Raimi, Detroit, Mich., Wachtell, Lipton, Rosen & Katz by Warren R. Stern, New York City, N.Y., for Salomon Brothers, Inc.

Wilmer, Cutler & Pickering by James Robertson, Washington, D.C., Clark, Klein & Beaumont by David M. Hayes, Detroit, Mich., for First Federal of Michigan and First Federal's Officers and Directors.

Warren D. Couger, Detroit, Mich., for First Federal of Michigan.

Honigman, Miller, Schwartz & Cohn by William G. Christopher, David B. Jaffe, Detroit, Mich., for Max M. Fisher.

## OPINION

GILMORE, District Judge.

This shareholders' derivative action challenges the sale of stock to the Fisher group, and is before the Court upon consideration of defendants' motion to dismiss the complaint because of inadequacy of class representation and failure to make demand upon First Federal of Michigan. The Court finds plaintiff to be an inadequate class representative for various reasons, primarily because of the conflict of interest that exists with respect to plaintiff's disclosed intention to purchase a majority of First Federal's shares and takeover the association, and the position of other shareholders as potential sellers of First Federal stock. The Court also finds that plaintiff's failure to make demand on First Federal prior to bringing this action is not excused, as plaintiff has failed to raise a reasonable doubt that either a majority of the board of directors who approved the Fisher group sale were disinterested and independent, or that the directors' decision to approve the sale was not a valid business judgment. For these reasons, the Court grants defendants' motion to dismiss the entire complaint.

I

This is an action by plaintiff Craig Hall, who is the largest shareholder of defendant First Federal, owning approximately 9.9 percent of its outstanding stock. Defendant First Federal is a federally chartered savings and loan association, with its principal place of business in Michigan. Fourteen of the fifteen directors of First Federal are named as defendants. The plaintiff's father is the only director who is not named as a defendant, and he is the only director who voted against the sale of stock to the Fisher group, which is the basis of this lawsuit. Of the fourteen directors, two are officers of the association. James Aliber is chairman of the board of directors and the chief executive officer of First Federal, and defendant Donald Mitzel is a director, as well as president, of First Federal. Senior vice president Warren Couger

is also named as a defendant, as are all of the members of the so-called Fisher group who bought stock in the sale at issue here. Finally, Salomon Brothers, Inc., a Delaware corporation, with its principal place of business in New York, is a defendant. Salomon Brothers acted as a broker and investment banker for First Federal.

Plaintiff has filed a three-count amended complaint alleging both individually and derivatively on behalf of the shareholders of First Federal: in count 1, breach of fiduciary duty of care, loyalty and fair dealing with plaintiff and other shareholders by acting in bad faith and self interest, and by negligently failing to exercise independent judgment in approving the sale of stock to the Fisher Group; in count 2, violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), by employing a scheme to defraud plaintiff, as the purchaser of securities, and First Federal, as the seller of securities, and Section 13(d) of the 1934 Act, 15 U.S.C. § 78m(d), in failing to disclose the nature of the Fisher group sale; and in count 3, common law fraud in connection with the sale to the Fisher group.

Plaintiff contends that the Fisher group sale was but one in a series of measures taken by the officers and directors of First Federal to entrench existing management. Other actions include the adoption of golden parachute agreements, favorable stock option plans for management, and staggered elections of directors. By November of 1984, the plaintiff had acquired approximately 9.9 percent of the outstanding stock of First Federal, and publicly disclosed this in filings with the Federal Home Loan Bank Board. Plaintiff contends that defendants have attempted various tactics from that time to ward off any possible proxy battle and takeover of management by him. One such tactic, according to plaintiff, was a lawsuit filed by First Federal in March of 1985 and dismissed nine days later upon Hall's filing of an amended Schedule 13D with the Federal Home Loan Bank Board, and upon agreement of First Federal to pay plaintiff $250,000 for ex-

penses and to issue a public letter of apology to Hall in return for Hall's agreement not to acquire more than 10 percent of the outstanding stock of First Federal for a period of 90 days. *First Federal of Michigan v. Hall*, civil action No. 85–CV–71004–DT. After the commencement of the instant lawsuit, another lawsuit was started by plaintiff against First Federal claiming that First Federal had failed to fulfill its obligation under the agreement to pay the $250,000 in expenses. *Hall v. First Federal of Michigan*, civil action no. 85–CV–72342–DT, filed on May 28, 1985.

The sale to the Fisher group was official on May 15, 1985 when the officers and directors approved the sale of 950,000 shares of its common stock to the group at a price that is claimed by plaintiff to have been lower than the actual value of the stock, with certain restrictions on transfer of stock and voting rights. The stock purchased by the Fisher group cannot be sold without permission of First Federal, and is required to be voted for two years in favor of management in any contest for control. Further, the Fisher group is entitled to the election of a director of its choice without shareholder approval. Additionally, the group was given broad indemnity from liability that may result from the sale.

Because of this sale, plaintiff's percentage ownership of First Federal dropped, and he had to purchase an additional 97,000 shares on the open market on May 20 and 21 in order to maintain his 9.9 percent ownership of the outstanding stock of First Federal. On May 23, plaintiff commenced this action, seeking primarily to rescind this sale.

In his most recent Schedule 13D filing, plaintiff has disclosed his intention to purchase up to 24.9 percent of the outstanding common stock of First Federal through the use of personal funds and borrowing, pursuant to customary margin agreements with brokerages and banks, and to seek the removal of certain current management without triggering the golden parachute agreements. He has also stated that he is considering various alternatives that would enable him to acquire up to 51 percent of the common stock, and that, upon selecting a particular course of action, he intends to acquire an additional 26.1 percent of the common stock to bring his total holdings to 51 percent of the outstanding common stock of the First Federal.

Defendants have filed a motion to dismiss all counts of plaintiff's complaint on the following grounds: 1) plaintiff cannot adequately represent other shareholders of First Federal in a shareholders' derivative action, and cannot bring an individual action for breach of fiduciary duties; 2) plaintiff failed to make proper demand on the board of directors before bringing the action, and has failed to allege adequate reasons for not making such a demand, and 3) plaintiff has failed to state a cause of action or plead fraud with particularity in counts II and III. In addition, Salomon Brothers moves to dismiss for failure to state any claim against it.

## II

The first issue is the adequacy of representation by plaintiff in a derivative stockholders' suit. Rule 23.1 of the Federal Rules of Civil Procedure provides:

> The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association.

The leading Sixth Circuit case on adequacy of representation is *Davis v. Comed, Inc.*, 619 F.2d 588 (6th Cir.1980). The *Davis* court discussed several factors that courts examine in considering whether a derivative plaintiff meets the requirements of Rule 23.1.

> Among the elements which the courts have evaluated in considering whether the derivative plaintiff meets Rule 23.1's representation requirements are: economic antagonisms between representative and class; the remedy sought by plaintiff in the derivative action; indications that the named plaintiff was not the driving force behind the litigation;

plaintiff's unfamiliarity with the litigation; other litigation pending between the plaintiff and defendants; the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself; plaintiff's vindictiveness toward the defendants; and, finally, the degree of support plaintiff was receiving from the shareholders he purported to represent.

*Id.* at 593–94.

To analyze this case under the *Davis* standard, this Court must first consider the economic antagonism between the purported class representative and the class. Here there is classic conflict. Plaintiff has announced his intention to attempt to buy additional stock and obtain control of First Federal, as indicated by his Schedule 13D filed with the Federal Home Loan Bank Board on June 17, 1985. This fact is undisputed. While plaintiff is in the posture of a buyer, every other shareholder is a potential seller. Plaintiff has announced his intention to buy an additional 41.1 percent of stock, and to do so he would need to buy 2.64 million additional shares. A price variation of just $1 a share would cost him $2,640,000. His obvious interest is to keep the price of the stock down, if he is seeking to acquire this much, and the obvious interest of the other shareholders is to keep the price up and to get the best possible price for their stock.

A second point, closely related to the first, is the relative magnitude of plaintiff's personal interest as compared to his interest in the derivative action itself. Rescission or damages for the sale to the Fisher group would either increase the equity holdings of the shareholders by the amount they were reduced as a result of the issuance of 960,000 new shares or would increase the equity capital of the corporation by an amount equal to the difference between what the Fisher group paid for the stock and its actual value. Certainly plaintiff's challenge of this stock sale, purportedly on behalf of the shareholders, is of lesser magnitude than his personal interest in acquiring an additional 41.1 percent of all of the outstanding common stock.

A third factor is other litigation pending between the plaintiff and defendants. This is the second of three lawsuits in this District. In addition, there are extensive proceedings pending before the Federal Home Loan Bank Board. In *Davis, supra,* the court noted that: "A very significant factor ... is that Davis has been involved in litigation with the defendants in several courts. This derivative action appears to be just one more skirmish in a larger war between Davis and some of the defendants, perverted into a weapon...." *Id.* at 597. That is precisely the situation we have here.

The next factor to be considered under *Davis* is the remedies sought by the plaintiff in the derivative action. Here, as in *Davis,* plaintiff seeks rescission of the transaction as an alternative to damages. While plaintiff prefers rescission of the sale because it would increase his percentage of ownership in First Federal, the Court is not convinced that other shareholders could not be adequately compensated by monetary damages.

The fifth factor to consider is the degree of support for the plaintiff by other shareholders. Here, no other shareholder has joined in this action, and plaintiff offers letters of inquiry and support from only five of the more than 5,000 shareholders of First Federal.

The next factor under *Davis* is plaintiff's vindictiveness towards defendants. While it may be difficult to measure, the Court finds it clearly apparent that there is not a good relationship between the parties. The record reflects some vindictiveness in this case.

There are several indications that plaintiff is the driving force behind the litigation. Defendants concede that factor, as they concede the factor of plaintiff's familiarity with litigation. Thus, out of the eight *Davis* factors, only two favor plaintiff, and one is somewhat inconclusive.

The Court concludes, therefore, that plaintiff is not an adequate representative for a derivative action under Fed.R.Civ.P. 23.1.[1]

### III

The determination on adequacy of representation is dispositive of the lawsuit. Nevertheless, the Court will determine the other issues raised in the motion to dismiss. Defendants' second argument is that the derivative claims are defective because of plaintiff's failure to make demand on the board of directors before filing this lawsuit. Rule 23.1 of the Federal Rules of Civil Procedure provides:

The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort.

There has been considerable argument here about the choice of law, and whether there is a federal common law. First Federal is not incorporated in any state but is a federally chartered association. Based upon an analysis of the new Michigan statute, *infra*, and existing federal cases on the demand requirement, the Court concludes that there is a federal common law, and there is no basic difference between it and the law of Michigan.

The Michigan Business Corporation Act, enacted in 1973, provides in pertinent part: "In such an action the complaint shall allege (b) with particularity the effort of the plaintiff to secure the initiation of the action by the board or the reasons for not making the effort." M.C.L.A. § 450.- 1491(2). No Michigan case has been decided on this issue since the passage of this statute in 1973. Siegel, Schulman and Moscow, in their 1979 treatise, *Michigan Business Corporations*, address the question of demand under Michigan law, and state:

At this writing there have been no Michigan cases decided under the Act that have interpreted the demand requirement. As suggested above, the Michigan courts obviously will not require that demand be made upon a board when the majority of the board are wrongdoers or controlled by wrongdoers. On the other hand, the Act, like the Delaware chancery rules, requires the plaintiff to set forth "with particularity" the reasons for not making demand. Thus, it is quite possible that Michigan courts, like [*Aronson v. Lewis*, 473 A.2d 805 (Del.1984) ] will closely scrutinize pleadings alleging domination and wrongdoing to assure that the demand requirement is not avoided by conclusory, nonparticularized allegations.

*Id.* at § 4.22, pp. 28–0 (Cum.Supp.1984).

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), is a leading case from Delaware on this point, from a court which is respected and often followed in corporate matters. The demand requirement under Delaware law is similar to that contained in the Michigan Business Corporation Act and Fed.R. Civ.P. 23.1 in that it requires the plaintiff to set forth "with particularity" the reasons for not making demand. The *Aronson* court closely scrutinized the pleadings to assure that the demand requirement was not avoided by conclusory, nonparticularized allegations. The derivative plaintiff in *Aronson* challenged certain loans and an employment agreement with a director who was also a 47 percent shareholder, and the chancery court excused demand on the grounds of futility. The Delaware Supreme Court reversed, stating:

---

**1.** Further, plaintiff is obviously not an adequate representative in a derivative action since he initially brought this suit in his own right, and still attempts to proceed individually, in the alternative to his derivative claim. Of course, he could not maintain a claim for breach of fiduciary duty as an individual plaintiff in his own right, since that cause of action belongs to the corporation and must be brought as a derivative action. *Walton v. Morgan Stanley & Co., Inc.*, 623 F.2d 796 (2d Cir.1980); *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727 (3d Cir.1970), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971).

[D]emand can only be excused where facts are alleged *with particularity* which create a reasonable doubt that the directors' action was entitled to the protections of the business judgment rule. Because the plaintiff failed to make a demand, and to allege facts with particularity indicating that such demand would be futile, we reverse the Court of Chancery.... (emphasis added)

*Id.* at 808.

The court emphasized that derivative suits, by their nature, impinge upon managerial preogatives, and that the demand requirement reflects the judicial preference that corporate decision-making, including the decision to litigate, be made in the first instance by the board of directors or the majority of shareholders. According to the court:

"[T]he demand requirement ... exists at the threshold, first to insure that a stockholder exhausts his intracorporate remedies, and then to provide a safeguard against strike suits. Thus, by promoting this form of alternative dispute resolution, rather than immediate recourse to litigation, the demand requirement is a recognition of the fundamental precept that directors manage the business and affairs of corporations.

In our view the entire question of demand futility is inextricably bound to issues of business judgment and the standards of that doctrine's applicability ... Absent an abuse of discretion, that judgment will be respected by the courts. The burden is on the party challenging the decision to establish facts rebutting the presumption.

*Id.* at 811–12.

The court concluded that:

[I]n determining demand futility the Court of Chancery in the proper exercise of its discretion must decide whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.

*Id.* at 814.

In other words, according to *Aronson*, the plaintiff must allege a prima facie case of either breach of duty of loyalty (i.e., self-dealing) or breach of duty of care (i.e., neglect or grossly negligent decision-making) before demand will be excused.

A number of federal cases have interpreted the demand requirement in Fed.R. Civ.P. 23.1. In *Heit v. Baird*, 567 F.2d 1157 (1st Cir.1977), the court relied heavily upon an earlier First Circuit case, *In re Kauffman Mutual Fund Actions*, 479 F.2d 257, *cert. denied*, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973). Referring to *Kauffman*, the *Heit* court said:

We stated that in order to make out sufficient participation by outside directors in the complained of conduct to excuse demand upon them, a complaint had to do more than allege approval of the conduct by these directors.

"Where mere approval of the corporate action, absent self-interest or other indication of bias, is the sole basis for establishing the director's 'wrongdoing' and hence for excusing demand on them, plaintiff's suit should ordinarily be dismissed."

*Id.* at 1160, quoting 479 F.2d at 265.

Another decision interpreting Rule 23.1 on the demand requirement is *Lewis v. Graves*, 701 F.2d 245 (2d Cir.1983), where the court said:

While we have not had occasion to rule on the issue of whether mere approval or acquiescence establishes futility, there is more than ample authority from other circuits that it does not. (citations omitted) The fact that a corporation's directors have previously approved transactions subsequently challenged in a derivative suit does not inevitably lead to the conclusion that those directors, bound by their fiduciary obligations to the corporation, will refuse to take up the suit. This is particularly true where the directors' prior acquiescence was obtained through fraud or where the deal-

ings in question otherwise went sour for the corporation. Moreover, Rule 23.1 would be substantially diluted if prior board approval standing alone established futility. Derivative suits are almost invariably directed at major, allegedly illegal, corporate transactions. By virtue of their offices, directors ordinarily participate in the decision making involved in such transactions.... Excusing demand on the mere basis of prior board acquiescence, therefore, would obviate the need for demand in practically every case.

*Id.* at 248.

In the instant case, Hall alleges that he has not made demand on the board as it would be futile, because: 1) all but one of the 15 members of the board were named defendants, 2) the challenged actions were taken or specifically approved by board members, 3) the defendant directors have breached their fiduciary duties to the shareholders, and 4) the directors have a personal interest in the subject matter of the action, and are themselves wrongdoers and could not be reasonably expected to pursue this action.

█ To reiterate, there have been no cases interpreting the demand requirements in the new Michigan act, but Siegel, Schulman and Moscow, *supra,* point out that *Aronson* is most likely to be followed. At the outset, the *Aronson* court explicitly considered and rejected the first two reasons given for failure to make demand, that is, that the directors are named as defendants in the action and previously approved of the challenged action. The Court rejected these arguments, finding that this "bootstrap" approach would effectively abrogate the demand requirement.

The third reason given by plaintiff is that the directors have breached their fiduciary duties. This reason, if alleged with particularity, is sufficient to excuse demand under *Aronson.* Regarding breach of duty of loyalty, nowhere has Hall alleged that any of the directors in this case has a pecuniary interest in the stock transaction itself, or that any director stands to profit economically from it. It is significant to note in this context that all except two of the directors are outside directors who have no employment relationship, other than as a member of the board, with First Federal. Hall has not alleged that negotiations with the Fisher group were not conducted at arms-length. Furthermore, plaintiff has failed to allege any fact indicating that the outside directors were controlled by management or otherwise acted in bad faith. Accordingly, he has failed to create by the allegations any reasonable doubt that the majority of the board of directors who approved the sale was disinterested and independent. In other words, plaintiff has failed to allege a breach of duty of loyalty.

The essence of plaintiff's complaint is that the board breached its fiduciary duties to the shareholders when it authorized the sale of 950,000 shares to the Fisher group for a below-market price. Defendants contend that plaintiff has failed to raise a reasonable doubt that the board did anything other than exercise its valid business judgment in approving the sales transaction. They contend specifically that the complaint is defective because it fails to allege the sale of stock for cash was not a proper corporate action designed to increase equity capital, increase the ratio of deposits to capital, and increase the protection of depositors in the Federal Insurance Fund. Defendants also contend that the complaint failed to allege that the ways and means of raising additional equity capital had not been under discussion by the board and under active consideration by a committee of the board, or that First Federal could have sold 950,000 shares on May 15 at a higher net price to the company, or that it could have initiated any public or private stock offering whose proceeds could be expected to have equal or higher net present value. Finally, defendants argue that the complaint fails to allege that the directors were not fully informed of the terms of the transaction, that Salomon Brothers did not make its views known at the meeting, or that its views were dis-

regarded, or that First Federal's outside counsel was not present or did not make his views known, or that his views were not followed.

In considering whether plaintiff has stated a prima facie case of breach of duty of care, it is important to note initially that decisions whether to sell additional stock, and on what terms to do so, are matters generally committed to the discretion of the board of directors, and the board is entitled to a presumption that it acted in good faith and exercised valid business judgment. *See, e.g., Heit, supra,* at 1162. *See also* Siegal, Schulman and Moscow, *Michigan Business Corporations,* § 5.08 (1979). Plaintiff has provided a lengthy list of factors that the board failed to consider, including whether better alternatives for raising capital were available, whether $14 was a fair price, whether it was necessary for First Federal to raise additional capital, whether there were other potential purchasers for the 950,000 shares, the propriety of the agreement restricting the transfer of the stock, the legality of the broad indemnity given to the purchasers, and whether the advice given by Salomon Brothers was complete. However, plaintiff has failed to set forth any facts showing that the board of directors did not consider these factors or alternatives, or that they failed to seek or follow the advice of Salomon Brothers or of counsel.

One outside director, Jervis C. Webb, was not at the meeting, did not vote on the transaction, and there is no reason whatever to show that he could not have called upon outside businessmen to form and work with him on a disinterested special litigation committee. *See* Note, "Derivative Suits and the Special Litigation Committee—A Question of Balance in Michigan Law, 29 *Wayne L.R.* 149 (1982). Instead, he was named as a defendant in this action. The Court is not convinced by plaintiff's argument that, because Mr. Webb failed to second the motion for reconsideration of the decision to sell the stock when it was proposed by plaintiff's father at a later board meeting, he was not sufficiently disinterested in the matter.

Given the sound rationale behind the business judgment rule and the good-faith presumption that attaches to board actions, particularly here where the plaintiff has failed to allege any self-dealing on the part of the outside directors, or control of the directors by management, together with the difficulty of ascertaining from the complaint the complete facts surrounding the sales transaction, the Court finds that this is a case where demand should have been made. It is unclear to what extent the purchase and sale was to create capital, to what extent the sale price was reasonable, to what extent the board relied on advice, and so forth. Clearly, plaintiff has failed to allege facts sufficient to support a claim of breach of duty of care. Accordingly, the Court cannot assume automatically that the board, or an independent litigation committee appointed for this purpose, would not rescind the sale or decline to pursue litigation. Thus demand was not excused in this case under either F.R.C.P. 23.1 or the Michigan statute.

## IV

As to counts II and III, these are actions that may be maintained individually by plaintiff. Count II, which alleges violations of Section 10(b) of the Securities Exchange Act of 1934, must be dismissed, however, because plaintiff is neither a buyer nor a seller of the stock involved. Additionally, plaintiff has failed to allege fraud under Section 10(b) with sufficient particularity to sustain the claim under *Benoay v. Decker,* 517 F.Supp. 490 (E.D.Mich.1981), *aff'd,* 735 F.2d 1363 (6th Cir.1984). With reference to alleged violations of Section 13(d) of the 1934 Act contained in count II, the Court finds the allegations related to disclosure of the nature of the Fisher group sale insufficient to state a claim.

Finally, with reference to count III, there is no individual claim of reliance upon the sale. There are insufficient allegations of fraud to sustain a fraud action, and therefore count III will be dismissed.

Defendant Salomon Brothers Inc. moves separately for dismissal on the grounds that the complaint contains no allegations that could support a claim against it. The Court holds that no cause of action has been stated against Salomon Brothers Inc., which creates an additional ground for dismissing this defendant.

Therefore, for the reasons given, the entire lawsuit will be dismissed.