**Matter of CONSUMERS POWER COMPANY DERIVATIVE LITIGATION.**

**Civ. A. No. 84CV–3788–AA.**

United States District Court,
E.D. Michigan, S.D.

July 25, 1986.

**420**

Elwood S. Simon, Schlussel Lifton Simon Rands Kaufman Galvin & Jackier, Irwin Alterman, Hyman Gurwin Nachman Friedman & Winkelman, Southfield, Mich., Nicholas E. Chimicles, Greenfield & Chimicles, Haverford, Pa., Bruce E. Gerstein, Garwin Bronzaft & Gerstein, New York City, Sol J. Schwartz, Schwartz Knauer & Abrams, Birmingham, Mich., Curtis V. Trinko, Law Offices of Curtis V. Trinko, Harvey Greenfield, New York City, Dennis J. Faucher, Saul Ewing Remick & Saul, Philadelphia, Pa., Martin H. Philip, Palmerton, Pa., for plaintiff.

James K. Robinson, Ronald S. Longhofer, Mark A. Stern, Honigman Miller Schwartz and Cohn, Laurence M. Scoville, Clark Klein & Beaumont, Eugene Driker, Barris Sott Denn & Driker, Detroit, Mich., for defendants.

Philip R. Placier, Thelin Marrin Johnson & Bridges, San Francisco, Cal., for defendant Bechtel Power Corp.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This shareholder's derivative litigation arises out of the alleged mismanagement of the construction of the Midland Power Plant. Several individual shareholder actions were consolidated into one suit. Defendant directors now seek to dismiss the consolidated suit on three grounds: the plaintiffs' failure to make a demand on the company's board of directors and the amended complaints inadequate reasons for excusing this failure; the inadequacy of the plaintiff representing the class of plaintiffs; and the lack of ripeness of the plaintiffs' claims for damages arising out of several pending lawsuits by other parties against the company. The court finds that the plaintiffs' failure to make a demand on the corporation is not excused by the well-pleaded allegations of their complaint and therefore the action must be dismissed without prejudice so that the plaintiffs may make this demand. Because of its holding on this first issue, the court does not address the two remaining arguments advanced by the defendants.

FACTUAL BACKGROUND

In 1967, Consumers Power Company (Consumers) engaged Bechtel Power Corporation (Bechtel) to do a feasibility study for the construction of a two-unit nuclear power plant in Midland, Michigan. After the study showed that construction was feasible, Consumers and Bechtel entered into a contract for the design, planning, and construction of the plant. Construction of the plant was to be completed by 1975 and was originally scheduled to cost $256 million.

The plaintiffs' first amended complaint states that the construction of the Midland plant was beset by serious management problems from its inception. These problems caused large cost overruns and delays in the completion of the plant. As costs and delays continued, the amended complaint alleges, Consumers was forced to either seek financing through public offerings of its stock and issuance of debt secu-

rities or to abandon the construction of the project and write off its investment in the Midland plant. The company chose to issue additional securities and debt. The amended complaint states that in order to make these offerings attractive to the public, and keep interest rates down, show increased earnings (which would have the incidental effect of increasing the bonuses payable to senior management), the officers and directors of Consumers embarked on a course of conduct to conceal the construction problems and the financial difficulties of the Midland plant, while at the same time inflating Consumers' earnings.

The construction delays kept Consumers from fulfilling the terms of a 1967 agreement with Dow Chemical Company (Dow) wherein Dow had promised to purchase large quantities of cogenerated steam that would be produced by the Midland plant. Consumers and Dow renegotiated this agreement in 1978. The new agreement contained a termination option for Dow if the Midland plant was not completed by the end of 1984. Consumers had obligated itself to keep Dow informed of all construction activities, delays, changes, etc., which would affect its ability to cogenerate steam at the plant. The amended complaint alleges Consumers' directors failed in these duties and the company was sued by Dow as a result.

Plaintiffs' allegations continue by saying that as early as January 1980, the directors and officers of Consumers Power concealed from the public the delayed completion dates and mismanagment problems. The company's annual reports and filings with the Securities and Exchange Commission (SEC) continued to optimistically forecast the completion of the plant. Throughout this period there were numerous reports of construction problems including the sinking of several portions of the plant, and several Nuclear Regulatory Commission (NRC) citations and civil penalties. Finally, in 1984, Consumers was forced to cut dividends and announce it was considering abandoning the project. Its accountant, Arthur Anderson, issued a qualified opinion about the annual financial report because of its doubts that Consumers would be able to recover its costs of constructing the plant. In July, 1984, Consumers finally announced it was cancelling the Midland plant completely. In the wake of this announcement, the SEC began an investigation of the company's disclosures in connection with the construction and cost overruns at the Midland plant.

The plaintiff's amended complaint alleges Consumer's directors issued false and misleading information to the investing public and company shareholders for the purpose of obtaining shareholder approval to amendments to the certificate of incorporation to increase the number of shares of authorized common, preferred, and preference shares. Count I of the amended complaint alleges this constitutes a violation of Section 14(a) of the Securities Act of 1934. 15 U.S.C. § 78n(a). In furtherance of the director's plans, the plaintiffs allege the directors caused the company to overstate its net income, which had the effect of increasing the bonuses payable to the company's officers under the Executive Incentive Compensation Plan (EICP). These bonuses are claimed to constitute a waste of corporate assets because they lacked adequate consideration. Plaintiffs in Count II of their complaint argue the directors breached their fiduciary duties to the corporation by overinflating the company's stated earnings and granting excessive bonuses.

Count III of the complaint states the directors' wrongful conduct in concealing construction delays, cost overruns, and other problems with the Midland plant led Dow to institute an action against Consumers. Plaintiffs request this court declare that any monies paid out to Dow as a result of the Dow action constitute a waste of corporate assets and assess these costs against the directors. Similar allegations are contained in Count IV of the amended complaint, where the plaintiffs focus on the directors' actions leading up to the institution of another lawsuit against the company, *In Re Consumers Power Company Securities Litigation*, 83–CV–6448–AA,

now pending before this court. This suit concerns the alleged violations of federal securities laws which resulted from the issuance of the misleading proxy statements and Annual Reports. Plaintiffs request the court to declare that any damages suffered as a result of this litigation be paid by the directors for their alleged breaches of their fiduciary duties.

Plaintiffs filed this action in several individual complaints, which were then consolidated by this court into a single case. None of the individual plaintiffs sought to make a demand on the company to assume the burden of suing these past and current directors. One shareholder did make a demand for the corporation to assume the responsibility of this action after the proceedings had already been commenced.

LEGAL ISSUES

■ The defendant directors claim the plaintiffs' failure to make a demand on the company to assume this suit requires the dismissal of this action. They point to the language of Fed.R.Civ.P. 23.1 in support of their argument. The text of Rule 23.1 reads:

Rule 23.1. Derivative Actions by Shareholders

In a derivative action brought by one of more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. The complaint shall also allege with particularity the efforts if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the

action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or member similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.

The threshold issue is whether federal law should be applied in interpreting the demand requirement or whether the court should look to Michigan law in applying the demand requirement. Initially, the court notes this action alleges violations of the federal securities laws and is therefore properly treated as a federal question case. There is a strong federal interest in applying federal law to resolve these issues.

The courts have split over whether state or federal law should be applied to the demand requirement of Rule 23.1. Those courts applying state law have looked to the Supreme Court's decision in *Burks v. Lasker,* 441 U.S. 471, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979). In *Burks,* the Supreme Court held that federal courts must ordinarily look to state corporate law to determine the powers of corporate directors. *Id.,* at 477–78, 99 S.Ct. at 1836–37. Some federal courts have used this principle to apply state substantive law to analyze whether the reasons offered by the plaintiff for excusing demand are adequate. *See Lewis v. Curtis,* 671 F.2d 779 (3d Cir.), *cert denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982); *Tabas v. Mullane,* 608 F.Supp. 759, 767 (D.N.J. 1985); *Reilly Mortgage Group, Inc. v. Mount Vernon Savings & Loan Ass'n,* 568 F.Supp. 1067 (E.D.Va.1983). There are other reasons why state law might be applied in lieu of federal law. First, the demand requirement is a rule of substantive right and federal courts in diversity cases must apply state substantive law. Moreover, because the demand requirement is substan-

tive, Rule 23.1, as a procedural rule, cannot modify this requirement because procedural rules cannot alter or define substantive rights. Third, the demand requirement is based on the substantive principles of state corporate law (e.g. the principle that the management of the corporation is left to the directors), and *Burks* indicates that state substantive law is the appropriate source of corporate law principles, even for suits governed by federal law. Finally, the Supreme Court has noted that the source of the demand requirement may be the applicable substantive law and not Rule 23.1 itself, although the Court found it need not decide this issue. *See Allison on Behalf of General Motors Corporation v. General Motors Corporation,* 604 F.Supp. 1106, 1115–16 (D.Del.1985).

On the other hand, most federal courts have applied federal law to determine if the demand requirement has been satisfied. *See, e.g., Lewis v. Graves,* 701 F.2d 245 (2d Cir.1983); *Heit v. Baird,* 567 F.2d 1157 (1st Cir.1977); *Vernars v. Young,* 539 F.2d 966 (3d Cir.1976). These courts have relied on the strong federal interest in determining whether the complaint complies with a federal rule's procedural requirements. In a diversity case, the question is complicated by the demand requirements' dual nature; it has both procedural and substantive aspects. In diversity, federal procedural law requires that the reasons for not making a demand be pleaded with particularity, but the source of the demand requirement itself may be state law. This problem is not presented when federal questions are presented by the complaint.

The only decision in the Sixth Circuit about the appropriate law to apply in determining whether the demand requirement has been satisfied in a shareholder's derivative action is *Hall v. Aliber,* 614 F.Supp. 473 (E.D.Mich.1985). The court in *Hall* found that federal common law applied to determine if the demand requirement had been satisfied by the complaint. *Id.* at 477. This court agrees that federal law should be applied to determine whether the demand requirement has been satisfied.

Several courts have concluded that federal and state law on the demand requirement of Rule 23.1 are identical. *See Allison on Behalf of General Motors Corporation v. General Motors Corporation,* 604 F.Supp. at 1116; *Hall v. Aliber,* 614 F.Supp. at 477. In *Hall,* the court concluded that the federal common law was the same as Michigan law and Michigan would apply Delaware law to determine if the demand requirements of Rule 23.1 had been met. This court does not accept that conclusion. Delaware law allows the plaintiff to establish futility of demand by alleging either a breach of the duty of loyalty or a breach of the duty of care. *Aronson v. Lewis,* 473 A.2d 805, 814 (Del.Supr.1984); *Pogostin v. Rice,* 480 A.2d 619, 624–25 (Del.Supr.1984); *Hall v. Aliber,* 614 F.Supp. at 477–78; *Tabas v. Mullane,* 608 F.Supp. at 767–69.

■ Federal courts have generally applied a stricter standard. In the test applied by the 1st and 2nd Circuits, the plaintiff must establish a breach of the duty of loyalty in order for demand to be excused. *See In re Kauffman Mutual Fund Actions,* 479 F.2d 257 (1st Cir.), *cert. denied,* 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973); *Lewis v. Graves,* 701 F.2d at 248. The federal rule holds that absent specific allegations of self-dealing or bias on the part of a majority of the board, mere director approval and acquiescence in the alleged misdeeds are insufficient to render demand futile. *Reilly Mortgage Group, Inc. v. Mount Vernon Savings & Loan Ass'n,* 568 F.Supp. at 1077. This is not consistent with the Delaware standard.

Differences also exist in the demand requirements imposed by the 5th Circuit. *Clark v. Lomas & Nettleton Financial Corporation,* 625 F.2d 49, 54 n. 5 (5th Cir.1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1738, 68 L.Ed.2d 224 (1981); *Liboff v. Wolfson,* 437 F.2d 121, 122 (5th Cir.1971). *See also, Dehaas v. Empire Petroleum Co.,* 286 F.Supp. 809 (D.Colo.1968), *aff'd,* 435 F.2d 1223, 1228 (10th Cir.1970). These courts have been very liberal in excusing plaintiffs from making demand on di-

rectors, interpreting the demand requirement in accordance with the flexible standards of modern notice pleading.

Faced with these divergent legal standards, this court finds the most appropriate legal standard to be that adopted by the 1st and 2nd Circuits. *See In re Kauffman Mutual Fund Actions*, 479 F.2d at 265. While this approach is not free from difficulty, since a director has undertaken an affirmative duty of due care and diligence and does not exempt himself from liability by passively rubber-stamping decisions that cause harm to the corporation, there are compelling reasons for requiring the plaintiffs to plead with particularity a breach of the duty of loyalty, and not merely justify their failure to make demand by pleading the directors acquiesced in the transaction under attack. Eliminating the necessity for demand on the basis of allegations that the directors acted in a negligent, or grossly negligent, manner in approving an injurious transaction would seriously undermine the demand on the directors requirement. Complaining shareholders usually make allegations of some conduct harmful of the corporation, so that if director approval of the transaction was enough to excuse demand, it would mean that demand would be excused in practically every case.

Moreover, in a case where the directors have merely acquiesced or approved a transaction, even if they were grossly negligent in doing so, there is no irrebutable presumption that the directors would not consider a claim for relief. Demand should be required in this case in order to allow the directors to fulfill their fiduciary obligations and to correct any harm they might have caused.

Finally, the resolution of the question of director liability for participation in a transaction harmful to the corporation requires an extended inquiry into the merits of the shareholder's claims. This inquiry is inappropriate to the threshold issue of exhaustion of intracorporate remedies. *Nussbacher v. Continental Illinois National Bank & Trust Co.*, 518 F.2d 873 (7th Cir.

1975), *cert. denied*, 424 U.S. 928, 96 S.Ct. 1142, 47 L.Ed.2d 338 (1976).

This holding is consistent with the purpose and history of Rule 23.1. The original purpose of the demand requirement is clear: to prevent courts from interferring with the internal affairs of private corporations until all intracorporate remedies have been exhausted. See Note, *The Demand and Standing Requirements in Shareholder Derivative Actions*, 44 U.Chi.L.Rev. 168 (1976). Forcing shareholders to first make a demand on the directors allows the directors to occupy their usual status as managers of the corporation's affairs. It gives the corporation the opportunity to take control of the suit by entrusting the management of the corporation to the board of directors. *Allison on Behalf of General Motors v. General Motors Corporation*, 604 F.Supp. at 1112. While Rule 23.1 recognizes that the shareholders police, enforce, and even assume the directors' duties of corporate governance, it acknowledges they may be overzealous in their enforcement actions. Thus, there must be rules to "police the police." See *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 104 S.Ct. 831, 78 L.Ed.2d 645 (1984). Because of these important policies behind the demand requirement, it should be rigorously enforced. *Cramer v. GT & E Corp.*, 582 F.2d 259, 275 (3d Cir.1978), *cert. denied*, 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979).

The futility exception should be narrowly construed in order to effectuate the above policies. When demand is not made on the directors, the corporation will be represented by shareholders who will generally have less information (because they lack access to the corporation's books and records), fewer resources (because they do not have the resources of the corporation behind them), and have no fiduciary duty to the corporation (unlike the directors). In addition, requiring demand as a condition precedent to a derivative action helps to curtail strike suits brought solely for their settlement value. See Note, *Demand on Directors and Shareholders as a Prerequi-*

*site to a Derivative Suit,* 73 Harv.L.Rev. 746, 749 (1960). For all of these reasons, the court holds that the plaintiffs must make well-pleaded allegations of a breach of the duty of loyalty in order for demand to be excused.

The plaintiffs' allegations of futility in this case are set forth in paragraph 18 of the first amended complaint. These allegations state:

18. No demand has been made by plaintiff upon the directors of Consumers Power to bring this action because:

(a) The members of Consumers Power's Board of Directors joined herein as defendants (hereinafter "the director defendants") participated in, acquiesced in, and approved the wrongs alleged and did so in affirmative violation of their duties to the Company and its stockholders and have permitted the wrongs alleged and/or have remained inactive although they have long had knowledge of those wrongs.

(b) The director-defendants participated in a long-term continuing course of corporate misconduct, mismanagement and waste. A majority of the director-defendants were direct participants in the mismanagement of the Midland Nuclear Power project ("Midland Plant") as described hereinafter, and/or were not diligent in connection with the construction of Midland Plant and as a result of their gross negligence and mismanagement the costs of the Midland Plant have increased dramatically.

(c) The board of directors caused the issuance of the materially false and misleading proxy statements complained of herein and has recommended to shareholders and solicited proxies from them for the adoption of the wrongful amendments to Consumers Power's Articles of Incorporation to increase the number of authorized common, preferred and preference shares in an effort to cover up their gross mismanagement and are jointly and severally liable for all the damages which resulted and will continue to result therefrom.

(d) The misconduct of the director defendnats caused Consumers Power to be named in a multiplicity of lawsuits brought by persons to recover damages from Consumers Power arising out of their purchase of Consumers Power securities. Director defendants Selby, Falahee, Youngdahl, Boris, Aymond, Dewar, Cutler, Gillett, Hubbard, Lund, McKone, Mirabito, Suerth and White, have been named in the class action captioned *In Re Consumers Power Company Securities Litigation,* 83–CV–6448–AA, and were responsible for the issuance by Consumers Power of materially false and misleading documents. they have been joined herein as defendants and are jointly and severally liable for all damages resulting thereform [sic].

(e) None of the director defendants is in a position to prosecute this action by reason of his own participation in the mismanagement of Consumers Power thereby placing him in an irreconcilable conflict of interest in terms of the prosecution of this action.

(f) The director defendants cannot defend their actions by any alleged "independent" business judgment since each of them is responsible for the present financial crisis facing Consumers Power, acted negligently, and would be adversely affected if the director defendants were sued, since they would be caused to sue themselves.

(g) Defendant directors Selby, Boris and Falahee are direct beneficiaries of the Executive Incentive Compensation Plan as described hereinafter in Count II and have thereby directly profited from their misconduct.

(h) Defendant Aymond, Gillett, McKone, Mirabito and Suerth are members of the Executive Organization Committee and approved all of the wrongful payments pursuant to the Executive Incentive Compensation Plan, to the senior executives of Consumers Power. In approving said payments in dereliction of their fiduciary obligations to the Company they have breached their fidcuciary duty to

Consumers Power's stockholders and are liable therefor.

(i) The Michigan Public Service Commission has urged the resignation of John D. Selby and has focused much of the criticism for Company mismanagement on defendant Selby and defendant Aymond the former Chairman of Consumers Power. Any demand upon the board to bring this action could not be impartially considered as a result of Selby's and Aymond's long standing domination of board members as a result of their control over the proxy machinery of the Company. On or about March 7, 1985, defendant Selby told the Board that he will resign effective November 1, 1985.

(j) On February 4, 1985, Marc Durant & Associates representing the estate of a shareholder of Consumers Power made a demand on the Company's Board of Directors to prosecute claims against Bechtel and the individual defendants. On March 6, 1985, Lawrence B. Lindemer, Esq., general counsel of the Company responded that prosecuting a claim against Bechtel at this time was not in the best interests of Consumers Power. On March 22, 1985, with respect to possible claims against the individual defendants, the Board of Directors communicated its decision not to consider prosecuting derivative claims until after reviewing this amended complaint. This action unequivocally demonstrates their intent not to prosecute the corporate claims against the named parties herein. Given the Board's response to date, a further demand would be a futile gesture.

The court will consider each of these allegations to determine if they state sufficient grounds to excuse demand.

Allegations (a) and (b) claim the defendant directors participated in, acquiesced in, approved of, or were not diligent in supervising, the misconduct surrounding the construction of the Midland plant. The federal courts applying the same standard as this court have consistently held this type of allegation to be insufficient to excuse demand. See *Lewis v. Graves*, 701 F.2d 245 (2d Cir.1983); *Grossman v. Johnson*, 674 F.2d 115 (1st Cir.), *cert. denied*, 459 U.S. 838, 103 S.Ct. 85, 74 L.Ed.2d 80 (1982); *Kaster v. Modification Systems, Inc.*, 731 F.2d 1014 (2d Cir.1984).

■ Allegation (c) is directed toward the director's breach of their duty of care. The issuance of misleading proxy statements and wrongful recommendations to the shareholders to change the corporation's articles of incorporation to issue more stock to finance the cost overruns of the company are not breaches of the duty of loyalty and therefore not grounds for excusing demand under the applicable legal standard.[1] Those federal courts which have addressed this issue have found demand is not excused where the plaintiffs merely allege the directors caused the company to issue false and misleading proxy statements. *Lewis v. Anselmi*, 564 F.Supp. 768 (S.D.N.Y.1983); *Lewis v. Graves*, 701 F.2d 245 (2d Cir.1983). The *Lewis* decision is particularly apposite because the allegations were almost identical to those made in this case. *Lewis v. Anselmi*, 564 F.Supp. at 771–72. The court dismissed the complaint without prejudice in *Lewis* so that the plaintiffs could make demand on the directors.

■ Allegation (d) claims the misconduct of the directors led to the company being named in several suits. This allegation specifies one action pending before this court, *In Re Consumers Power Securities Litigation*, 83–CV–6448–AA. Elsewhere in the complaint, plaintiffs also mention a lawsuit by Dow Chemical brought against Consumers for its alleged breach of its contract to provide steam from the Midland plant. As noted above, the directors' issuance of the proxy statements, or other acts as directors in relation to the completion of the construction of the Midland plant, are only grounds for excuse if there

---

1. The court notes that under the *Aronson* standard of demand excuse breaches of the duty of care can excuse demand. It makes no determination of whether these facts would support such a claim under the *Aronson* standard.

are allegations of a breach of the duty of loyalty. The plaintiffs must establish a breach of the duty of loyalty. The fact that the corporation has been named in several lawsuits does not speak to this issue. While this allegation may establish the company will be damaged by these lawsuits and that the loss could be shifted onto the directors *if* the plaintiffs are allowed to bring this suit without demand, it does not address the threshold issue of why demand is excused.

■ Paragraph 18(e) says none of the directors can prosecute an action against the others because they have all participated in the alleged acts of mismanagement and therefore face a conflict of interest. The plaintiffs must allege a conflict of interest with particularity. *Grossman v. Johnson*, 674 F.2d at 125; *Heit v. Baird*, 567 F.2d at 1161–62. These allegations are too conclusory.

Allegation (f) states the directors cannot rely on the business judgment rule since each of them is responsible for the present financial crisis facing the company, acted negligently, would be adversely affected if this lawsuit was allowed to proceed, and would be forced to sue themselves. To the extent this claim merely restates the plaintiffs' earlier argument that the directors participated in the alleged misdeeds, it is not sufficient to excuse demand. Plaintiffs' other allegation, the directors would be forced to sue themselves, has been rejected by several courts as insufficient to excuse demand. *Allison on Behalf Of General Motors v. General Motors Corporation*, 604 F.Supp. at 1115; *Heit v. Baird*, 567 F.2d at 1159–62. See also, *Atkins v. Tony Lama Company, Inc.*, 624 F.Supp. 250 (S.D.Ind.1985).

■ Allegations (g) and (h) must be read together. They allege the Executive Incentive Compensation Plan wrongfully paid out bonuses to director/officers Selby, Boris, and Falahee. Five outside directors are alleged to have been on the Executive Organization Committee which authorized these payments. These allegations concern the activities of eight of the fifteen directors on the board at the time of the alleged mispayments.

To excuse a demand on the company, the plaintiffs must state a breach of the director's duty of loyalty by a majority of the board of directors. *Lewis v. Graves*, 701 F.2d at 249. If the plaintiffs' allegations are accepted as true, it may be argued that the acts of the three director/officers can be construed as a breach of their duty of loyalty to the company. However, the remainder of the directors, including those serving on the Executive Organization Committee which authorized the payments have not been alleged to have violated their duty of loyalty to the company. Those directors on the committee approving the payments cannot be said to have breached their duty of loyalty just by approving the payments. Since these directors are not alleged to have received any personal benefit from their actions, the plaintiffs fail to state a breach of the duty of loyalty. *Lewis v. Graves*, 701 F.2d at 249.

■ Plaintiffs' claim in paragraph 18(i) that their demands will not be impartially considered by the board because of the chairman of the board's "long-standing domination" of the board through his control of the proxy machinery. There are no well-pleaded facts to support this conclusory claim. The mere allegation of domination and control is not enough to excuse demand. *Grossman v. Johnson*, 674 F.2d at 124; *Atkins v. Tony Lama Company, Inc.*, 624 F.Supp. at 256.

■ Finally, the plaintiffs allege demand is excused because after the filing of this action, another shareholder made a demand on the company. Plaintiffs believe this demand after the suit had commenced, which they claim the board refused, demonstrates the futility of making a demand. Demands made after the filing of the complaint in a shareholder's derivative action do not satisfy the demand requirement of Rule 23.1 *Shlensky v. Dorsey*, 574 F.2d 131, 141–42 (3d Cir.1978). Such a demand would not have afforded the directors an opportunity to make the judgment of whether to as-

sume the action initially and what form it should take. To hold otherwise would make the demand requirement a mere formality. *Id.* at 142.

The court finds the plaintiffs have not made any allegations which support excusing demand in this case. Because of the plaintiffs' failure to support their claim that demand is excused, there is no need to address the other parts of the defendants' motion. Since demand is not excused, the plaintiffs' complaint must be dismissed. The dismissal is without prejudice so that the plaintiffs can make their demand on the company. If the demand is refused, the plaintiffs are free to file this action again. See *Lewis v. Anselmi,* 564 F.Supp. at 773. Defendants' motion to dismiss is granted.

SO ORDERED.