Charles HEIT, Plaintiff, Appellant,

v.

Walter S. BAIRD et al., Defendants, Appellees.

No. 77–1327.

United States Court of Appeals, First Circuit.

Argued Oct. 6, 1977.

Decided Dec. 29, 1977.

Stephen D. Oestreich, New York City, with whom David I. Cohen, Salem, Mass., and Wolf, Popper, Ross, Wolf & Jones, New York City, were on brief, for plaintiff, appellant.

William A. Zucker, Boston, Mass., with whom Robert A. Trevisani and Gadsby & Hannah, Boston, Mass., were on brief, for defendants, appellees.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and CRARY, District Judge.*

LEVIN H. CAMPBELL, Circuit Judge.

This appeal involves the adequacy of allegations in a complaint brought in a stockholder's derivative suit as to why the plaintiff failed to make a demand on the directors to correct the alleged wrongs before suit was brought. Applying Federal Rule of Civil Procedure 23.1 and the standards developed in *In re Kauffman Mutual Fund Actions,* 479 F.2d 257 (1st Cir.), *cert. denied,* 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973), we affirm dismissal of the suit.

■ The complaint at issue here was brought by Charles Heit, a stockholder of Baird Atomic, Inc. both at present and at all other relevant times, on behalf of the corporation. It alleged that the Board of Directors of Baird Atomic, forewarned of a potential contest for control being considered by a minority shareholder, issued a large block of new stock which it placed, for the most part, in the hands of three of its seven members. According to the complaint, the voting stock in the company thus was increased from 885,130 to 1,086,230 shares, and 188,600 of the 201,100 new shares went to defendants Baird, Dempsey, and Medrozian, directors and officers of Baird Atomic, who previously had controlled a total of approximately 55,000 shares. The purchase price ranged from $1.95 to $2.00 a share, but favorable financing arrangements permitted the three defendants to obtain the stock through an initial outlay of only $10,750. The complaint alleged these transactions were effected only to thwart the threatened control contest and that they constituted a violation of the Securities Exchange Act and Rule 10b–5 as well as a breach of common law fiduciary duties.[1] Plaintiff excused his failure to seek relief for these wrongs from the directors as follows:

"No demand has been made by plaintiff upon the directors of B–A to institute and prosecute this action because all of said directors are named as defendants herein, and they have participated in, authorized and approved and are personally liable for the wrongs complained of in this action; and any demand upon them to instiute [sic] such an action would have been futile and useless and that thereby said defendants would have been required to institute an action against themselves."[2]

The complaint sought cancellation of the transfers of stock, an award of damages to the corporation and payment of plaintiff's attorneys' fees.[3]

---

* Of the Central District of California, sitting by designation.

1. The common law claim was abandoned during this appeal.

2. The memorandum of the district court accompanying its order dismissing the suit referred to plaintiff's disregard of both the board of directors and the shareholders as reasons for dismissing this suit. Because the failure to make a demand on the directors was sufficient to justify dismissal, we need not discuss the adequacy of the excuse for failure to make a demand on the shareholders.

3. In as much as a motion pursuant to Rule 23.1 challenges the sufficiency of a complaint, it would seem that neither side can supplement the record either to support or oppose the ade-

Rule 23.1 requires the pleader of a stockholder's derivative suit to "allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority . . . and the reasons for his failure to obtain the action or for not making the effort." Courts have tended to vary in the rigor with which they enforce Rule 23.1, see Note, *Demand on Directors and Shareholders as a Prerequisite to a Derivative Suit,* 73 Harv.L.Rev. 746, 747 (1960); in this circuit the Rule has been vigorously enforced. We said in *Kauffman, supra,*[4] that this requirement both continues a long tradition in the federal courts previously codified as Equity Rules 94 and, later 27, and represents a deliberate departure from the relaxed policy of "notice" pleading promoted elsewhere in the Federal Rules. The requirement places an initial burden on the stockholder "to demonstrate why the directors are incapable of doing their duty," *id.* at 263, and failure to meet this burden requires dismissal of the suit.

The *Kauffman* court developed standards by which a failure to make a demand on directors could be tested. First, the opinion observed, resistance to the suit by the board did not excuse demand.

"Whatever might be the effect if the resistance were on substantive grounds, . . . to attempt to capitalize on the circumstance that the corporations are seeking to dismiss because of plaintiff's failure to make demand is classic bootstrap. Domination is not established by insistence on the right to have plaintiff plead a valid basis for suit.

479 F.2d at 264. Second, a complaint must allege "that those who were unaffiliated directors at the time of suit participated" in the purported wrongdoing. *Id.* The plaintiff must show not only that some directors were hostile to his suit because of their own self interest, but that a majority of the board at the time of suit were so implicated in the complained of acts as to make a demand for redress futile.

The requirement of the *Kauffman* opinion most relevant here is its third point. We stated that in order to make out sufficient participation by outside directors in the complained of conduct to excuse demand upon them, a complaint had to do more than allege approval of the conduct by these directors.

"Where mere approval of the corporate action, absent self-interest or other indication of bias, is the sole basis for establishing the directors' 'wrongdoing' and hence for excusing demand on them, plaintiff's suit should ordinarily be dismissed."

*Id.* at 265. In addition to alleging approval, a complaint had to demonstrate that the nature of the misconduct acquiesced in impeached the directors' motives.

"Logic suggests a sharp distinction between a transaction completely undirected to a corporate purpose and one which, while perhaps vulnerable to criticism, is of a character that could be thought to serve the interests of the company. . . . If a director goes along with a colleague

quacy of the allegations. *See Brooks v. American Export Industries, Inc.,* 68 F.R.D. 506, 507 (S.D.N.Y.1975); *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 353 F.Supp. 264, 268 (S.D.N.Y.1972), *aff'd* 495 F.2d 228 (2d Cir. 1974). Although this court in *Kauffman, supra,* 479 F.2d at 263 n. 4, discussed particular facts brought out by affidavits, it noted "basically the motion to dismiss tested the sufficiency, *vel non,* of the complaint." The affidavits and other submissions involved here, to the extent they established anything, tended to help the plaintiff by indicating that at the time this suit was filed, six of the seven directors who approved the complained of stock issue remained on the Baird board, the seventh having died in the interim. Shortly after filing of

the complaint, a special stockholders meeting elected two new directors, who are not parties to this suit.

4. *Kauffman* has been cited with approval by the Second Circuit, where many derivative suits are brought. *Brody v. Chemical Bank,* 482 F.2d 1111, 1114, *cert. denied,* 414 U.S. 1104, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973); *see Jones v. Equitable Life Assurance Society,* 409 F.Supp. 370, 373 (S.D.N.Y.1975). *But cf. Nussbacher v. Continental Illinois National Bank and Trust Co.,* 518 F.2d 873, 878 n. 9 (7th Cir. 1975), *cert. denied,* 424 U.S. 928, 96 S.Ct. 1142, 47 L.Ed.2d 338 (1976).

in an act on its face advantageous only to that colleague and not to the corporation, this in itself is a circumstance, or particularity, supporting the claim that he is under that colleague's control. It may be assumed that he would remain so when the directorate votes on plaintiff's demand. . . . It does not follow, however, that a director who merely made an erroneous business judgment in connection with what was plainly a corporate act will 'refuse to do [his] duty on behalf of the corporation if [he] were asked to do so.' . . . Indeed, to excuse demand in these circumstances—majority of the board approval of an allegedly injurious corporate act—would lead to serious dilution of Rule 23.1."

*Id.* [Citations omitted.]

■ Although the complaint here alleges that more than a majority of the present directors of Baird Atomic approved of the purportedly wrongful transaction, it does not allege with sufficient particularity the majority's involvement in "a transaction completely undirected to a corporate purpose." It does accuse the directors of authorizing the issue of a large block of stock for inadequate consideration for the sole purpose of retaining control of the corporation. But stripped of these conclusory allegations, the facts set forth in the complaint show only the sale of stock to insiders at what was contended to be the market price through favorable financing arrangements at a time when a contest for control might have been brewing. We do not believe the district court abused its discretion in determining these facts did not make out with sufficient particularity misconduct that would excuse a demand on directors. *See* 3B Moore's Federal Practice ¶ 23.1.19, at 23.1–83 (Rev. ed. 1977).

■ Directors may not exploit their official position to manipulate the issue of shares solely to perpetrate their own control of the corporation. *See, e. g., Andersen v. Albert & J. M. Anderson Mfg. Co.,* 325 Mass. 343, 346–47, 90 N.E.2d 541, 544 (1950); *L. E. Fosgate Co. v. Boston Market Terminal Co.,* 275 Mass. 99, 175 N.E. 86

(1931); *Elliott v. Baker,* 194 Mass. 518, 80 N.E. 450 (1907). But an issue of stock that has the collateral effect of enhancing the power of incumbent management is not invalid if the transaction has as its principal purpose some proper corporate goal. *McPhail v. L. S. Starrett Co.,* 257 F.2d 388, 394–96 (1st Cir. 1958); *Northwest Industries, Inc. v. B. F. Goodrich Co.,* 301 F.Supp. 706, 712–13 (N.D.Ill.1969); *Cheff v. Mathes,* 41 Del.Ch. 494, 199 A.2d 548 (1964); *Cummings v. United Artists Theatre Circuit, Inc.,* 237 Md. 1, 204 A.2d 795 (1964). And management has not only the right but the duty to resist by all lawful means persons whose attempt to win control of the corporation, if successful, would harm the corporate enterprise. *McPhail v. L. S. Starrett Co., supra; Northwest Industries, Inc. v. B. F. Goodrich Co., supra; Cheff v. Mathes, supra; cf. Gerdes v. Reynolds,* 28 N.Y.S.2d 622 (Sup.Ct.1941).

For all the facts pleaded in the complaint show, the alleged transaction may have served any of a number of entirely proper corporate purposes. The sale of stock would assure Baird Atomic of some new capital through the purchase price; it could promote an increase in the loyalty and effort of key personnel who benefitted from the favorable financing; it could encourage these persons to remain with the company by increasing their financial commitment to the organization; it could serve to ward off a raid by persons believed to be intent on harming the corporate enterprise. *See McPhail v. L. S. Starrett Co., supra,* 257 F.2d at 394–96. The sale of stock thus fits the description in *Kauffman* of a transaction "which, while perhaps vulnerable to criticism, is of a character which could be thought to serve the interests of the company." *Id.* at 265. Because plaintiff did not plead facts that indicated in some way the sale of the stock constituted a naked grab of corporate power, the district court was justified in concluding that plaintiff had failed to allege with sufficient particularity participation by a majority of the present directors in a transaction so contrary to corporate goals as to indicate the majority's

domination by those who dealt directly with the corporation.[5]

 It is true that the complaint charges the directors with permitting the sale of stock for inadequate consideration. Were there facts substantiating this charge, the case might well take on a different complexion. Whatever the purpose of the sale, a manifest inadequacy of consideration could excuse a demand upon the directors who authorized such a siphoning off of corporate assets by some of their number. *Kauffman, supra,* 479 F.2d at 265. The complaint here, however, contains only an unadorned allegation that the consideration was inadequate; it does not back up the charge with any facts. To the contrary, the complaint recognizes the directors' contention that the sale price represented the over-the-counter market price of the stock and contains nothing to refute that claim. Although the purchasers received favorable financing assistance, the complaint does not allege either that the defendants did not intend to meet their obligations as they came due or that the financing terms materially altered the value of the consideration. This court previously has recognized the collateral benefits realized by a corporation in providing financing for employee stock purchases. *See McPhail v. L. S. Starrett Co., supra.*

 It is hornbook law that an assessment of the adequacy of consideration received for an issue of stock in the first instance is the responsibility of the board of directors. 2 Fletcher, Cyclopedia Corporations § 523, at 568 (Rev. ed. M. Wolf 1969). This authority extends to issues where some of the purchasers are directors. *Cf. Pappas*

*v. Moss,* 393 F.2d 865, 867 & n.1 (3d Cir. 1968); *Elliss v. Penn Beef Co.,* 9 Del.Ch. 213, 80 A. 666 (1911). In the absence of more particularized allegations indicating such gross inadequacy in the consideration as to manifest an abuse of the directors' power to set a price for the stock, the complaint cannot be read as alleging more than "an erroneous business judgment in connection with what was plainly a corporate act", if that. *Kauffman, supra,* 479 F.2d at 265. An allegation of the latter sort would be insufficient to excuse a failure to make a demand on the directors.

 The plaintiff attempts to make up for the complaint's deficiencies in respect to Rule 23.1 by pointing out that more than a majority of the present board of directors are defendants in this suit and thereby in a position where they would not assent to its prosecution. To credit this argument, however, would be to permit an obvious bootstrap to relieve putative plaintiffs of their obligations under Rule 23.1. Merely naming disinterested directors as defendants does not allow the prosecutor of a derivative suit to avoid his duty to make a demand on them. *Phillips v. Bradford,* 62 F.R.D. 681, 688 (S.D.N.Y.1974).

 As the complaint fails to set forth facts showing that a majority of the directors of Baird Atomic engaged in a facially improper transaction, we hold that the failure of the plaintiff to make a demand on the directors before commencing this suit was unexcused, and dismissal of the case for noncompliance with Rule 23.1 was proper.[6]

*Affirmed.*

---

5. This requirement of particularity, as was stated in *Kauffman,* is the essence of the Rule. "Whether the word 'substantive' is exact, it is clear that the 'particularity' must appear in the pleading itself; the stockholder may not plead in general terms, hoping that, by discovery or otherwise, he can later establish a case. Indeed, if the requirement could be met otherwise, it would be meaningless." *Id.* at 263.

6. The purpose of the demand requirement is, of course, to require resort to the body legally charged with conduct of the company's affairs

before licensing suit in the company's name by persons not so charged. Given the expense of litigation, and the normal presumptions running in favor of those acting for the company, this seems only reasonable. Resort to the board, even assuming the directors should turn down plaintiff's demand, would not necessarily preclude suit thereafter. Participation that is insufficient to excuse a demand may nonetheless disqualify directors from barring a derivative suit, *see Swanson v. Traer,* 249 F.2d 854, 858–59 (7th Cir. 1957); Cary, Cases and Materials on Corporations 916–17 (1969); but a de-

mand permits the company an opportunity to put its own house in order before resort to the courts. And, of course, in situations where the board of directors has the authority, by adverse action upon a demand, to bar prosecution of a suit in the corporation's behalf, because in the directors' good faith judgment the suit would not be of benefit to the corporation, the policies underlying the demand requirement would seem even stronger.