## Baer v. Krumbiegel

*Leon Gold, Richard Goldstein,* and *Albert C. Oehrle*, for plaintiff.

*Morris Gerber, Bernard M. Borish, David F. Simon, Marvin Comisky, Leonard Dubin, Goncer Krestal, Thomas O'Neill, Jr.,* and *Jeffrey R. Lerman*, for defendants.

NICHOLAS, *J.,* May 27, 1980—Plaintiff, Sidney M. Baer, filed his complaint in equity on May 2, 1980 alleging, inter alia, that defendants, Fidelco Growth Investors (FGI), its trustees and U.S. Lend Lease (Lend Lease), consummated an agreement on April 25, 1980 which had as its primary purpose a dilution of plaintiff's voting power from 23.2 percent to 18.5 percent by the sale to Lend Lease of 400,000 shares of FGI stock, approximately 21 percent of all outstanding shares, which Lend Lease will presumably vote in favor of incumbent management and trustees at the annual shareholders'

meeting scheduled for tomorrow, Wednesday, May 28, 1980.

Under the terms of the Lend Lease transaction, FGI conveyed to Lend Lease the Indian Creek property, a 96 unit apartment building in Wynnewood, Lower Merion Township, planned for condominium conversion, 400,000 shares of FGI stock, and an additional 400,000 warrants for a period of five years at an exercise price of $5 per share. In exchange, Lend Lease paid FGI the agreed consideration of $4,050,000 in cash and delivered and transferred to FGI 192,661 shares of the common stock of International Income Property (IIP), a company owned by Lend Lease.

Plaintiff avers that the transaction was wholly lacking in the adequacy of consideration received by FGI; that the sole and improper purpose of the transaction was to create and place 400,000 "friendly" votes in the hands of Lend Lease, FGI's "white knight" in the parlance of such proxy fights, in order to defeat Baer and his shareholders' protective committee; and that without such additional votes to be cast in favor of the incumbent trustees, Baer and his committee would have had an excellent chance to succeed in electing its own slate of trustees at the annual meeting, thus ousting the incumbents.

Plaintiff has petitioned the court for a preliminary injunction, seeking to enjoin defendant, Lend Lease, from voting any of its FGI shares in connection with the election of trustees of FGI scheduled for tomorrow, May 28, 1980, at the annual meeting of shareholders.

Defendants, for their part, in their pleadings, briefs and in the testimony and evidence presented, assert that the primary purpose of the Lend Lease

transaction was as a proper and sound business transaction, beneficial to all of the shareholders of the trust and not for the improper purpose of gaining an advantage to the incumbent trustees in connection with the upcoming election; and, that the consideration received by FGI was fully adequate and fair. Defendants urge the court to deny plaintiff's request for preliminary injunction.

At the court's direction, extensive depositions were taken and completed on an expedited, daily copy, basis, during the week of May 12 through May 16. The court has painstakingly read over 1,000 pages of such depositions and has reviewed the voluminous exhibits produced by both sides. In addition, the court conducted two full days of hearings on May 22 and May 23 and has fully considered the excellent and exhaustive briefs filed by able counsel for all parties. The matter is now before the court for determination of plaintiff's petition for preliminary injunctive relief.

## DISCUSSION

As indicated, the factual issues which the court must first resolve are:

1. Whether the consideration for the Lend Lease transaction was grossly inadequate; and

2. Whether the trustees acted primarily from any improper motive.

First, as to the adequacy of the consideration and the fairness of the transaction, each side produced an expert witness who offered an opinion concerning the evaluation of the constituent elements of the transaction as well as an opinion as to its overall fairness. Plaintiff's witness was Martin J. Whitman. Defendants presented R. Allen Miller of the

firm of Butcher and Singer. For their purposes, both men accepted the value of Indian Creek as being $3,500,000 in accordance with an appraisal done for defendants dated April 23, 1980 by Reaves C. Lukens Company. They each obviously accepted the cash at face value $4,050,000. Their disagreement centered upon the valuation of the 400,000 shares of FGI stock and the 400,000 FGI warrants and the treatment and value of the 192,661 shares of IIP. Mr. Miller would count them all accruing to FGI while Whitman would deduct the 40,000 shares that would be returned to Lend Lease as an FGI shareholder entitled to distribution of the IIP shares on a one for ten basis. Also, Whitman ascribed $1,000,000 as the value of "contract rights" which Lend Lease got while Miller did not ascribe any value to this whatsoever. The testimony of the expert witnesses may thus be summarized as follows:

### PLAINTIFF'S EXPERT M. J. WHITMAN

| Lend Lease Got | | FGI Got | |
|---|---|---|---|
| Indian Creek 400,000 shares of FGI at $9.57 per share | 3.5 Million | Cash $4,050,000 192,661 shares of IIP at $10.75 per | (152,661) |
| "Book value" 400,000 warrants at $6 | 3.8 Million | share mean market price | 1.6 Million |
| per warrant | 2.4 Million | Total | 5.6 Million |
| Contract rights | 1.0 Million | | |
| Total | 10.7 Million | | |

Mr. Whitman thus concluded that the consideration moving from Lend Lease to FGI was wholly and egregiously inadequate to the extent of about $5,000,000.

## DEFENDANT'S EXPERT R. ALLEN MILLER
## OF BUTCHER AND SINGER

| Lend Lease Got | | FGI Got | |
|---|---|---|---|
| Indian Creek | 3.5 Million | $4,050,000 Cash | |
| 400,000 shares | | 192,661 shares | |
| of FGI at 4⅝ bid | | of IIP at $10.25 | |
| market price | 1.85 Million | bid market price | 1.9 Million |
| 400,000 | | Total | 6 Million |
| warrants at $1.56 calculated by using | | | |
| Shelton's "College Professor | | | |
| formula" | $624,000 | | |
| Contract rights | No Value | | |
| | Ascribed | | |
| Total | $5.9 Million | | |

Mr. Miller thus concluded that the transaction was fair and that the consideration was fully adequate.

I find the testimony of Mr. Miller, who personally spent some 15 days evaluating this transaction for the purpose of rendering a fairness opinion to the trustees of FGI, to be more credible in this regard. I therefore conclude that the purchase price constitutes fair value to FGI under the circumstances and that the transaction as a whole is fair to FGI. I am satisfied that it falls within the range of fairness to constitute a legitimate business judgment on the part of the trustees.

Secondly, with regard to the motivation of the trustees, while it is manifestly the case that the recently created 400,000 new shares of FGI stock conveyed to Lend Lease will be voted in favor of the incumbent management and trustees to their advantage and to plaintiff's disadvantage in the election of trustees to be held tomorrow, May 28, it is nevertheless clear that such fact alone will not

serve as a basis to invalidate the transaction if it is but an incidental effect of an otherwise valid and sound business transaction which is primarily for the benefit of all of the shareholders. In Heit v. Baird, 567 F. 2d 1157, 1161 (1st Cir. 1977), it is stated:

"Directors may not exploit their official position to manipulate the issue of shares solely to perpetuate their own control of the corporation. [Citing cases.] But an issue of stock that has the collateral effect of enhancing the power of incumbent management is not invalid if the transaction has as its principal purpose some proper corporate goal. [Citing cases.]"

The court has endeavored to carefully scrutinize the reasons offered by the trustees as the basis for the Lend Lease transaction. To be sure, the sequence and timing of events as well as the plain negative effect of the transaction upon Baer's takeover plans generates a high degree of suspicion. Nevertheless, upon such review, I must conclude, at this juncture of the proceedings, that this transaction, as in Heit v. Baird, supra, may have served any number of entirely proper and legitimate corporate purposes. As disclosed by the depositions and the testimony presented, the transaction generated much needed cash, $4,050,000, for FGI. The IIP stock, 192,661 shares, would be distributed to all shareholders of FGI (one share for ten) as a dividend, the first since before 1975. The equity position of Lend Lease by virtue of its ownership of 400,000 shares of FGI stock will serve to "lock in" Lend Lease and bring to bear its undisputed strength and expertise in the development of FGI's remaining undeveloped assets. In this con-

nection, I note particularly the deposition of Andrew L. Lewis, the only trustee who cast a negative vote for the transaction. Mr. Lewis felt that the transaction was an excellent business opportunity for FGI and was sound and advantageous to all of the shareholders. His negative vote was based entirely upon his personal philosophy that a transaction of such dimension should first be submitted to the shareholders for approval. It is clear, however, that such approval is not required by the declaration of trust. Mr. Lewis further testified, as did trustee Matthew B. Weinstein, that the trustees wished to delay the transaction until the shareholders could approve it but that Lend Lease for its own purposes was adamant in its insistence on a closing date before April 30, 1980. On the issue of whether or not the primary purpose of the transaction was to ensconce the incumbent trustees and management in office, again the deposition of Mr. Lewis is enlightening. As he indicated, the transaction serves to create two nearly equal blocks of voting strength, the Baer group and Lend Lease with approximately 20 percent each, with the remaining 60 percent publicly held. Further, Mr. Lewis indicated that the transaction may actually serve to the disadvantage of incumbent management because of Lend Lease's superior capacities in the area of land development, the apparent future course of FGI. Mr. Lewis said he saw the same risks for management in the event of a Baer victory or a Lend Lease victory.

Here, as in Heit v. Baird, supra, at 1161, citing In re Kauffman Mutual Fund Actions, 479 F. 2d 257 (1st Cir. 1973), cert. denied, 414 U.S. 857 (1973): "The sale of stock thus fits the description in Kauffman of a transaction 'which, while perhaps

vulnerable to criticism, is of a character which could be thought to serve the interests of the company.'"

Our Supreme Court of Pennsylvania has repeatedly enunciated the four basic prerequisites necessary to the granting of a preliminary injunction which is characterized as a "harsh and extraordinary" remedy. They are:

1. The party seeking a preliminary injunction of any nature must establish a clear right to the relief sought: Jostan Aluminum Products v. Mount Carmel District Industrial Fund, 256 Pa. Superior Ct. 353, 357, 389 A. 2d 1160, 1162-63 (1978); New Castle Orthopedic Associates v. Burns, 481 Pa. 460, 392 A. 2d 1383 (1978);

2. The preliminary injunction is necessary to prevent immediate and irreparable harm which cannot be compensated by damages;

3. Greater injury will result by refusing the preliminary injunction than by granting it; and

4. The preliminary injunction must properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct.

In addition to the dilution of plaintiff's voting power, plaintiff alleges irreparable harm as a result of the action of the American Stock Exchange "delisting" FGI shares because the Lend Lease transaction, involving as it did twenty percent of the outstanding stock of FGI, was not approved by the FGI shareholders as required by FGI's listing agreement with AMEX. Plaintiff alleges that he is harmed in that such action adversely affects the economic value of his shares and lessens their marketability. In this connection, plaintiff offered no specific evidence of an adverse impact on the value of the shares. In addition, it appeared that

FGI's stock is traded over-the-counter which provides a substantial and brisk market for FGI shares.

As I have endeavored to indicate, I am unable to conclude from the evidence thus far presented that plaintiff will probably ultimately succeed on the merits. Consequently, plaintiff has not established the kind of clear case required to warrant the granting of preliminary injunctive relief.

Accordingly, the court enters the following

## ORDER

And now, May 27, 1980, the plaintiff's petition for preliminary injunctive relief is denied.