[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT
This is a shareholders' derivative action filed by the plaintiffs, Eleanor and Patricia Noble. Defendants named in the action are Walter Baum, Cameron Clark, Jr., Robert W. Dixon, Irwin Engleman, Marion S. Kellog, Hubert T. Mandeville, Leonard J. Massello, E. Cortright Phillips, Charles E. Spenser, III, Reid C. Spenser, George F. Taylor, Ernest C. Trefz, Craig E. Weatherup, Francis J. Wiatr, and Murray H. Morse, Jr. ("individual defendants"). These individual defendants are either directors and/or officers of Citytrust Bancorp and its subsidiaries. The complaint also cited as a defendant Arthur Anderson Co., the outside auditors for Citytrust Bancorp ("Anderson"). Finally the complaint designated Citytrust Bancorp, Inc. ("Citytrust"), as a nominal defendant.
The plaintiffs have filed an amended complaint in which they claim that the individual defendants had breached their fiduciary duties, were grossly negligent, and had caused the waste of corporate assets in their functions of oversight, management and control of Citytrust's loan portfolio and lending activities. Plaintiffs allege that the breach of duty was especially manifest in permitting extensive high-risk, shared-appreciation loans to be made where the borrowers did not even have to make a minimal equity investment and in permitting other imprudent acquisition, development and construction arrangements. Plaintiffs claim that, as a result of defendants' grossly negligent conduct in managing the bank's loan portfolio, Citytrust has already reported over $140,000,000 of losses. The plaintiffs assert that Citytrust is now saddled with CT Page 4431 non-performing assets in excess of the amount of its shareholders' assets and its continued existence is imperiled. The plaintiffs also claim that Citytrust has been subjected to federal securities law class action suits in which serious charges have been made regarding the completeness and accuracy of its disclosures. If such charges are sustained, the plaintiffs allege that Citytrust's auditor would be similarly implicated in such violations.
The action seeks to hold the directors and the auditor personally liable for loan losses and the plaintiffs seek to recover, on behalf of Citytrust, damages for those losses from these defendants and indemnification from them for any losses that may result from actions against Citytrust arising out of the loan decisions.
The individual defendants filed a motion to strike the amended complaint, arguing that the plaintiffs failed to make a demand on the board of directors to institute this suit, which they allege is a requisite condition precedent to any derivative action. In addition, the individual plaintiffs allege that the plaintiffs have failed to plead, nor can they plead, allegations necessary to excuse demand upon the board. Anderson filed a similar motion.
The plaintiffs responded by objection to these motions arguing that the demand requirement should be excused as futile and that they have established adequate probable cause in their allegations to excuse demand on the board before bringing this action.
 I.
Shareholders' derivative actions have long been recognized as an effective technique in enforcing the fiduciary obligations of corporate management and protecting the interests of stockholders from managerial self-dealing. Hawes v. Oakland,104 U.S. 450 (1881). Usually a derivative suit involves two considerations: first, an action against the corporation or its board for failing to bring a suit and secondly, an action on behalf of the corporation on the claim which it is alleged the corporation failed to pursue. Ross v. Bernard, 396 U.S. 531
(1970).
Although there is a paucity of Connecticut cases dealing with shareholders' derivative suits, it is clear that such suits have also long been recognized in this State. Allen v. Curtis,26 Conn. 456, 460-61 (1857).
However, to prevent derivative actions from undermining the CT Page 4432 corporate form of conducting business, the United States Supreme Court, in Hawes, approved a requirement that demand first be made upon the board of directors to bring the action which the shareholder claims should be maintained. "`[B]efore the shareholder is permitted in his own name to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain within the corporation itself, the redress of his grievances, or actions in conformity with his wishes.' [Hawes v. Oakland, 104 (14 Otto) U.S. 450] at 460-461. In other words, forcing shareholders to exhaust intra-corporate remedies by making demand on directors allows the directors a chance to occupy their proper position as managers of the corporation's business, giving the corporations an opportunity to take control of a suit that will be brought on its behalf." Mozes on Behalf of General Electric Co. v. Welch,638 F. Sup. 215 (D.Conn. 1986)
"[C]ourts should not interfere . . . nor should they sanction the interference by shareholders with the duties of the board of directors unless it is clear that the board has no intention of taking the appropriate action itself." Brooks v. American Export Industries, Inc., 68 F.R.D. 506, 510 (S.D.N.Y. 1975).
Because of this reluctance to interfere with the usual conduct of corporate business, there is a consensus among the jurisdictions which have considered the issue, that a shareholder must either make a demand on the board or in the complaint plead with particularity the exceptional circumstances that demonstrate why such a demand would be futile. See, De Mott, Shareholder Derivative Actions: Law and Practice, Sec. 5:03 (1987).
This consensus is reflected in Rule 23.1 of the Federal Rules of Civil Procedure:
"The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort."
 II.
In their memorandum, the plaintiffs have summarized the substantive claims against the individual defendants made in the amended complaint and the ways in which the individual defendants, as officers and directors, permitted Citytrust to loan out corporate assets in gross departure from prudent banking practices and in violation of their duties of due care. The plaintiffs claim that the complaint adequately alleges that CT Page 4433 the defendants were grossly negligent (i) in authorizing and permitting large numbers of loans to borrowers without adequate investigation or evaluation of the borrowers' creditworthiness and without obtaining adequate security for repayment (Amended Complaint, Paragraph 18); (ii) in diminishing Citytrust's credit standards (Amended Complaint, Paragraph 19); (iii) in making commercial loans to borrowers with minimal or no equity investment in the project (Amended Complaint, Paragraph 20); (iv) in making shared appreciation loans of 100% of the acquisition, development and construction costs, with no downpayment by the developers (Amended Complaint, Paragraph 21); and (v) in allowing sloppy lending practices, violations of SBA regulations, inadequate checks of creditworthiness and backgrounds of borrowers and overall gross incompetence at Citytrust's Capital Impact subsidiary (Amended Complaint, Paragraph 31-32). The result of this dereliction is claimed to be the loss of over $140,000,000 — more than 70% of shareholders' equity.
There appears no dispute that the substantive allegations of the complaint do not allege self-dealing or fraud on the part of members of the board, but are based primarily on the claim of gross negligence by the board in its administration and supervision of the bank's loan portfolio.
The plaintiffs in this action do not disagree with the general requirement that demand on the board is a usual prerequisite for maintaining a derivative action. The plaintiffs, however, have set forth their reasons for claiming that demand in this case is futile in paragraph 9 of the amended complaint.
"9. Plaintiffs have not made any demand on the present Board of Directors of Citytrust to institute this action because such demand would be a futile and useless act for the following reasons:
(a) Citytrust has been forced to incur at least $140 million in losses recognized in 1989 and the first quarter of 1990 as a result of the Officer/Director Defendants' gross negligence in failing to properly supervise and manage Citytrust's loan portfolio and lending activities;
(b) The Officer/Director Defendants cannot defend their actions by any alleged "independent" business judgment because each of them is responsible for the current financial condition of Citytrust, each has acted or failed to act in gross negligence, and each would be adversely affected if the action were brought, because each would be required to sue himself;
(c) The acts complained of herein constitute violations of CT Page 4434 fiduciary duties owed by Citytrust's Board of Directors and these acts are incapable of ratification;
(d) Because of their active participation in the management and supervision of Citytrust, the Director defendants are in no position to prosecute this action. Each of them is in an irreconcilable conflict of interest in terms of prosecution of this action;
(e) The known principal wrongdoers and beneficiaries of the wrongdoing complained of herein are in a position to, and do, dominate and control the Citytrust Board of Directors. Thus, the Board could not exercise independent objective judgment on deciding whether to bring this action nor to vigorously prosecute this action;
(f) Citytrust maintains policies of insurance for itself to cover the costs of indemnification of each of the Officer/Director defendants and of damages from the Officer/Director Defendants' negligence and mismanagement. Under the terms of any such insurance policies, Citytrust would be required by the carriers to cooperate in the defense of any claims, such as the present action. Thus, defendants could be contractually obligated to ignore any demand that would cause Citytrust to institute and/or prosecute any action against the Officer/Director Defendants for mismanagement because to do so could result in the loss of its insurance coverage. Similarly, Citytrust would be disabled contractually from pursuing the Officer/Director defendants directly as it would not benefit from any coverage they may have;
(g) To the extent that the officers and directors have liability insurance coverage, a typical exclusion from such coverage is a claim brought by Citytrust against its own officers and directors;
(h) The acts complained of herein, and the expenditure of funds complained of, constitute a waste of Citytrust's assets, and thus are acts incapable of ratification;
(i) In order to bring this action for breach of fiduciary duty and gross negligence, the members of the Citytrust Board of Directors would have been required to sue themselves and/or their fellow directors and allies in the top ranks of the corporation, who are their good friends and with whom they have entangling financial alliances, interests, and dependencies, which they would not do. They therefore would not be able to vigorously prosecute any such action; and
(j) The members of the Citytrust Board of Directors, CT Page 4435 including each of the defendants herein, receive from Citytrust and its subsidiaries substantial fees' bonuses, payments, benefits, and other emoluments by virtue of their membership on the Board and their control of Citytrust. They have thus benefited from the wrongs herein alleged and have engaged therein to preserve their positions of control and the perquisites thereof, and are incapable of exercising independent objective judgment in deciding whether to bring this action. The Board members also have close personal and business ties with each other and are, consequently, interested parties and cannot in good faith exercise independent business judgment to determine whether to bring this action against themselves.
The defendants' position with regard to the issue of futility is that "[i]n Connecticut, as in the majority of other jurisdictions, demand may not be excused for futility in the absence of specific allegations of fraud or self-dealing." (See, Individual Defendants' Memorandum at page 7.) The defendants assert that because there is no allegation in the amended complaint that the defendants committed fraud or had a personal interest in the loans challenged in the complaint, or that they received fees or commissions in connection with the loans, or that they otherwise profited in any way from the loans, but merely a claim of gross negligence in their function as officers and directors, there is no basis for excusing demand. The defendants contend that an action based primarily upon alleged negligence, even gross negligence, of the board does not support a waiver of the demand requirement.
The plaintiffs assert that allegations of gross negligence as claimed in the complaint when set forth with particularity excuses demand.
 III.
The issue to be decided then is whether, under Connecticut law, allegations of gross negligence in the management of the corporation by the board of directors establish demand futility. This issue might be decided on a motion to strike since it involves the standing of the plaintiffs to bring the action and therefore the jurisdiction of this court. See, Ardmare Construction Co. v. Freedman, 191 Conn. 497, 498, n. 4 (1983). ". . . [T]he defendants in a derivative action may properly question whether the plaintiff has standing in equity to act as the nominal shareholder acting on behalf of the corporation and other shareholders. . . . In this aspect of a derivative suit, the corporation is a named defendant, and it also has the right to CT Page 4436 object to and question the capacity of a minority shareholder to bring suit on its behalf. . . ." Barrett v. Southern Connecticut Gas Co., 172 Conn. 362, 370-71 (1977).
 IV.
There has been no specific decision, among the few Connecticut state cases dealing with derivative suits, on the issue of whether demand is excused where a majority or the board are alleged to have been grossly negligent. Under similar circumstances, the Connecticut Supreme Court has often looked to federal decisions for precedent. Barrett, supra, at 371-373. Moreover, the U.S. District Court in Mozes on Behalf of General Electric Co. v. Welch, 638 F. Sup. 215 (D.Conn. 1986), acting as it anticipated the Connecticut courts would act, applied Federal Rules of Civil Procedure 23.1 to determine demand futility. Mozes, supra, at 218.
In examining that precedent, it must be noted that there has been conflict among the federal courts as to what law determines the sufficiency of an excuse. Some courts, such as the Third Circuit, have used state substantive law to determine whether to excuse demand. Lewis v. Curtis, 671 F.2d 779 (3rd Cir), cert. denied, 459 U.S. 880 (1982). In that case, the court followed the Supreme Court lead in Burks v. Lasker, 441 U.S. 471 (1979), which held that federal courts must look to state corporation law to determine the powers of a board.
Nonetheless, "most federal courts have applied federal law to determine if the demand requirement has been satisfied." Matter of Consumers Power Co. Derivative Litigation,111 F.R.D. 419, 423 (E.D.Mich. 1986); also, Lewis v. Graves, 701 F.2d 245
(S.D.N.Y. 1983); Heit v. Baird, 567 F.2d 1157 (1st Cir. 1977). The federal law would seem to require specific allegations of bias or self-dealing by a board majority. Consumers, supra, at 423.
However, some federal courts have applied state law, such as that of Delaware, which could excuse demand for claimed breach of the duty of loyalty or care, provided the plaintiff is persuasive that the so-called "business judgement rule" is not applicable as a shield. See, e.g., Aronson v. Lewis,473 A.2d 805, 814 (Del. 1984); Pogostin v. Rice, 480 A.2d 619, 624-25; Tabas v. Mullane, 608 F. Sup. 759, 767-69 (D.C.N.J. 1985).
As indicated, federal courts generally excuse demand only when particularized allegations of fraud or self-dealing by a board majority indicate demand would be futile.
Those courts which require allegations of fraud or CT Page 4437 self-dealing before excusing demand usually require that the acts of the board be more than acquiesence in or approval of the alleged wrongdoing. "Absent specific allegations of self-dealing or bias on the part of a majority of the board, mere approval and acquiescence are insufficient to render demand futile." Lewis v. Graves, 701 F.2d 245, 248 (S.D.N.Y. 1983). "Where mere approval of the corporate action, absent self-interest or other indication of bias, is the sole basis for establishing the directors' `wrongdoing' and hence for excusing demand on them, plaintiffs' suit should ordinarily be dismissed." In re Kauffman Mutual Fund Actions, 479 F.2d 257, 265 (1st. Cir), Cert. denied,414 U.S. 857 (1973); see also, Heit v. Baird, 567 F.2d 1157,1160 (1st Cir. 1977).
In the Mozes case, supra, demand was not excused because the plaintiff failed to allege with particularity any self-dealing, bias, bad faith, or corrupt motive.
In considering what degree of particularity is required, the federal courts apply a federal law standard. "[T]he substantive law of the state of incorporation should govern whether demand is sufficient or excused [but] . . .federal law should determine whether the plaintiffs' demand or excuse has been pled with particularity sufficient to meet the requirements of the Federal Rule of Civil Procedure." In Re Bankamerica Securities Litigation, 636 F. Sup. 419, 421 (C.D.Cal. 1986). It would seem, as the Mozes court predicted, that this would be the standard for Connecticut.
In reviewing the standards of those jurisdictions which require particularized allegations of bias or self-dealing, it appears that merely charging the directors with approving the challenged conduct or failing to correct the conduct is insufficient. Lewis v. Graves, supra, at 249.
Instead, the plaintiff must show personal benefit to the majority of the board, In Re E.F. Hutton Banking Practices Litigation, 634 F. Sup. 265 (S.D.N.Y. 1986); Lewis v. Anselmi,564 F. Sup. 768 (S.D.N.Y. 1983); Lewis v. Sporck, 612 F. Sup. 1316,1322 (N.D.Cal. 1985); or that directors actively participated in the challenged conduct or fraud, Cathedral Estates v. Taft Realty Corp., 228 F.2d 85, 88 (2d Cir. 1955); Oldfield v. Alston, 77 F.R.D. 735, 740 (N.D.Ga. 1978); Papilsky v. Berndt, 59 F.R.D. 95, 97 (S.D.N.Y. 1973); or that the transaction is "completely undirected to a corporate purpose." Heit v. Baird, 567 F.2d 1157, 1161 (1st Cir. 1977).
In Lewis v. Graves, supra, the plaintiff in a derivative suit argued that demand was excused because the board had previously approved the challenged transaction. The court CT Page 4438 disagreed, however, explaining that "bald charges of having approved the alleged wrongdoing [are] inadequate to demonstrate futility." Id, at 245. On the other hand, in Cathedral Estates v. Taft Realty Corp., supra, the Second Circuit court of Appeals upheld the Connecticut District Court's excuse of demand. The court there found that the defendants were actively involved in the challenged illegal conduct because "they were the prime movers in the transaction." Id, at 88.
The court in Oldfield v. Alston, supra, also excused demand because the directors either actively participated or "approved or ratified [the] transactions with knowledge or notice of their illegality." Id, at 740. The transactions in that case transcended mere acquiescence because they involved specific SEC violations; illegal conduct, not merely unwise or negligent.
Papilsky, supra, also involved illegal acts — violations of SEC regulations.
In Barr v. Wackman, supra, a case decided under New York state law, the court excused demand because the plaintiff alleged the existence of a "plan and scheme" by which the defendant directors derived personal benefit to the exclusion of the corporation. In that case, the New York court determined that the complaint specifically pleaded "board participation in and approval of active wrongdoing." Barr, supra, at 508.
In In Re E.F. Hutton Banking Practices Litigation, 634 F. Sup. 265,271 (S.D.N.Y. 1986), the plaintiff argued that demand was futile because some board members had conflicts of interest. The plaintiff failed, however, to implicate a majority of the board with particularized allegations. Moreover, the court rejected the argument that receipt of directors' fees created "self-interest."
In Lewis v. Anselmi, 564 F. Sup. 768, 772 (S.D.N.Y. 1983), the court concluded similarly because the plaintiff failed to prove that a majority profited personally from the challenged conduct or fraud or had "any other personal interest which might amount to bias."
The court in Lewis v. Sporck, 612 F. Sup. 1316 (N.D.Cal. 1985) also refused to excuse demand because the plaintiff failed to show personal interest. Although the plaintiff claimed the defendants had falsified test data and stolen trade secrets, he failed to allege that the directors derived personal benefit. "All that is alleged is approval of corporate wrongdoing, which by itself is insufficient to justify a finding of futility under Rule 23.1" CT Page 4439
In Heit v. Baird, 567 F.2d 1157 (1st Cir. 1977), the plaintiff claimed that the board issued a block of new stock to three of its seven directors when it knew of a potential minority contest; that the purpose was to prevent the contest; and that the conduct violated SEC rules and breached common-law fiduciary duties. The court held that such conduct, if alleged with particularity, could show "a transaction completely undirected to a corporate purpose," but that the plaintiffs had merely offered conclusory allegations. The court found that all the plaintiffs did show was a sale with favorable financing, at the purported market price, to insiders when a control contest may have been afoot.
A transaction is undirected to a corporate purpose when it is facially improper and advantageous only to the directors. In Re Kauffman Mutual Fund Actions, 479 F.2d 257, 265-66 (1st Cir). The plaintiff in Kauffman alleged that mutual fund directors conspired with affiliated advisers to charge excessive, noncompetitive fees set merely on the average net assets. The court found no facial impropriety, which it said was required to show an undirected purpose. Bad business judgment is not sufficient. "If by plaintiff's merely alleging error, the directors are presumed incapable of exercising sound business judgment, Rule 23.1 would become virtually meaningless.
It is generally held that allegations must be factually explicit and conclusory allegations are insufficient to show futility. Heit v. Baird, supra, at 1161.
In Mozes on Behalf of General Electric Co. v. Welch,638 F. Sup. 215, 219-20 (D.Conn. 1986), the court deemed the plaintiff's allegations conclusory because they failed to set out "any legally cognizable reason as to why the GE Board is unable to redress the alleged wrongs." Id, at 219. Although the plaintiff made a demand, he filed suit before the board could respond. The plaintiff failed, however, to "evidence a refusal to act or any other concrete indication that the board had no intention of responding. . ."
The plaintiff's allegations in Lewis v. Graves, 701 F.2d 245
(S.D.N.Y. 1983), were also deemed conclusory. Although he challenged the acquisition and merger of a target company and the issuance of stock to officers and directors pursuant to an executive stock plan, the plaintiff failed to allege how the transactions "ensured their positions of the defendant directors." The court declined to infer "self-interest. . .by mere conclusory allegations that the defendant directors approved [a transaction] simply to secure their own positions, without providing any logical or factual nexus between the transaction and the asserted enrichment." CT Page 4440
Moreover, in most courts which have addressed the issue, including those which follow the Delaware rule, simply naming the directors as defendants does not excuse demand. "To construe it as sufficient would mean that plaintiffs could readily circumvent the demand requirement merely by naming as defendants all members of the derivative corporations's board." Lewis v. Graves, 701 F.2d 245, 249 (S.D.N.Y. 1983). "Merely naming disinterested directors as defendants does not allow the prosecutor of a derivative suit to avoid his duty to make a demand on them." Heit, supra, at 1162. "[A]llegations that demand is futile because the directors `would be suing themselves'" are also insufficient to excuse demand. Mozes, supra, at 219. "The law. . .of the State of Delaware is clear that an allegation of demand futility must go further than naming all the directors as defendants." In Re E.F. Hutton Banking Practices Litigation, 634 F. Sup. 265, 272 (S.D.N Y 1986). Accordingly, there appears to be consensus among the courts to reject "bootstrap allegations of futility, based on claims of directional participation. . .coupled with a reluctance by directors to sue themselves." Pogostin v. Rice, 480 A.2d 619,625 (Del. 1984).
 IV.
The plaintiffs cite Joy v. North, 692 F.2d 880 (2d Cir.), cert. denied 460 U.S. 1051 (1983), for the proposition that Connecticut would follow the Delaware courts and those federal circuits which follow Aronson v. Lewis, 473 A.2d 805 (Del. 1984) and its reasoning, in finding that allegations of gross negligence by the majority of the board would excuse demand as being futile. This argument that directorial negligence excuses demand draws most heavily on Aronson. The plaintiffs in Aronson brought suit to challenge a transaction between the corporation and the majority shareholder, which included a five year employment agreement with bonuses, the creation of a salaried consultant position on termination, and other termination provisions favoring the shareholder. Compensation would be unaffected by any future inability to perform by the 75 year-old shareholder. The plaintiff argued that there was no valid business purpose and that the agreement was a waste of corporate assets.
The court in Aronson discussed the board's duty of care under the so-called "business judgment rule" as follows:
 Second, to invoke the rule's protection directors have a duty to inform themselves, prior to making a business decision, of all material information reasonably available to them. Having become so CT Page 4441 informed, they must then act with requisite care in the discharge of their duties. While the Delaware cases use a variety of terms to describe the applicable standard of care, our analysis satisfies us that under the business judgment rule director liability is predicated upon concepts of gross negligence. . .
 However, its should be noted that the business judgment rule operates only in the context of director action. Technically speaking, it has no role where directors have either abdicated their functions, or absent a conscious decision, have failed to act. But it also follows that under applicable principles, a conscious decision to refrain from acting may nonetheless be a valid exercise of business judgment and enjoy the protection of the rule.
Id. at 812-13 [Citations and footnotes omitted].
Despite its treatment of the duty of care, the court determined that the allegations of fact "`show that there is a reasonable inference' the business judgment rule is applicable for purposes of a pre-suit demand." Id. at 814. The plaintiff had argued that demand would be futile because the directors acquiesced in the transaction, the board was dominated, and the defendants would be required to sue themselves. The court held that a demand is futile only when a "reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." Id. at 814. Thus, the court created a two-tiered test whereby:
 the court of Chancery must make two inquiries, one into the independence and disinterestedness of the directors and the other into the substantive nature of the challenged transaction and the board's approval thereof. As to the latter inquiry the court does not assume that the transaction is a wrong to the corporation requiring corrective steps by the board. Rather, the alleged wrong is substantively viewed against the factual background alleged in the complaint. As to the former inquiry, directorial independence and disinterestedness, the court reviews the factual allegations to decide, whether they raise a reasonable doubt, as a threshold matter, that the protections of the business judgment rule are available to the board. CT Page 4442
It would appear that in a jurisdiction adopting the Aronson rule, any claims of negligence necessarily require analysis under the business judgment prong. This is supported by subsequent cases in Delaware and among the federal circuits. See, for example, Pogostin, supra, at 624, where, citing its decision in Aronson, the Delaware court reiterated that demand futility is tied to the business judgment rule.
The business judgment rule provides that directors or officers will not be held liable for breach of fiduciary duty to a corporation or its stockholders for mistakes of fact or law that cause harm to the corporation or its stockholders, if the directors acted in good faith. "Under the `business judgment doctrine', acts of directors, within the powers of a corporation, in furtherance of its business, made in good faith and in the exercise of honest judgment, are valid and conclude the corporation and its stockholders; questions of management policy, contract expediency, and adequate consideration are left to the directors honest and unselfish decision, judgment and discretion and may not be interfered with or restrained. Hermione v. American Express Co., 279 N.Y.S.2d 867.
In Cottle v. Hilton Hotel Corp., 635 F. Sup. 1094 (N.D.Ill. 1986), the plaintiff shareholder charged the directors with breach of fiduciary duty and waste of corporate assets. In adopting the Aronson test, the court stated that "`in rare cases a transaction may be so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists.'" (emphasis in original). Id. at 1099, citing Aronson,473 A.2d at 815. Absent particularized facts, however, "the protections of the business judgment rule are waived only in the case of improperly motivated corporate decisions, not in the case of poor ones." Cottle, 635 F. Sup. 1094, 1099.
In Tabas v. Mullane, 759 F. Sup. 657 (D.C.N.J. 1985), the plaintiff brought suit alleging fiduciary breach and waste of assets. In adopting Aronson, the court stated that "[b]oard decisions carry a strong presumption of good faith and validity." Id, at 766. This good faith presumption can only be overcome by facts pled with particularity. The Tabas court also rejected the argument that demand is futile when the directors must sue themselves.
The District court of California, in applying Delaware law, determined that a derivative complaint must "specifically identify what it is about the transactions that creates a reasonable doubt as to the applicability of the business judgment rule. . ." In Re Bankamerica Securities Litigation,636 F. Sup. 419, 421-22 (C.D.Cal. 1986). CT Page 4443
In In Re General Motors Class E Stock Buyout Sec. Lit.,694 F. Sup. 1119 (D.Del. 1988), the court found the shareholders' claims sufficient to avoid dismissal. The plaintiffs challenged a proposed corporate buyout as violating SEC regulations. The plaintiffs made a demand, which the board denied, and the plaintiffs argued that this refusal violated the board's fiduciary duty. The court said the plaintiffs could satisfy the particularity requirement "by alleging fraud, bad faith or a grossly negligent failure to make an informed decision." Id., at 1132. Citing Aronson, the court analyzed the board's decision against the requirements of the business judgment rule, i.e., that a board act only on full information. It appears, however, that the issue in General Motors was the propriety of the board's refusal of the demand, not demand futility.
The court in Cramer v. General Telephone Electronics Corporation, 582 F.2d 259 (1978), cert. denied 439 U.S. 1129
(1979) at 275 stated that a demand could be futile when "the directors' judgment is so unwise or unreasonable as to fall outside the permissible grounds of the directors' sound discretion." The plaintiff merely alleged, however, that an internal audit committee failed to recommend litigation against the board. Therefore, the court found no lapse in business judgment absent particularized allegations that the audit committee had been requested to determine the necessity of litigation. Id. at 276.
While it is true that the court in Walden v. Elrod,72 F.R.D. 5 (W.D.Okla. 1976) held that "where a derivative suit is brought against the majority of the directors of a corporation for willful or negligent breach of their fiduciary duties a demand as a prerequisite to the bringing of a suit is almost always excused." Mindful that the case involved allegations of director self-dealing, this assertion, absent the requisite showing of particular breach of the business judgment rule, is incorrect today in light of the recent decisions on this issue, even if it were an accurate assertion in 1976. Rather, most jurisdictions today seem to restrict or reject excuse or demand for claims of negligence, absent particularized facts which demonstrate probable cause that the directors were not disinterested and independent and that the challenged transaction was other than the product of a valid exercise of business judgment. See, e.g., Aronson, supra, at 814: Mozes, supra, at 219; Matter of Consumers Power Co. Derivative Litigation, 111 F.R.D. 419, 424 ("Eliminating the necessity for demand on the basis of allegations that the directors acted in a negligent, or grossly negligent, manner in approving an injurious transaction would seriously undermine the CT Page 4444 demand . . . requirement.").
The plaintiffs in the instant case allege that demand would be futile for the following reasons: (1) defendants were grossly negligent "in failing properly to supervise and manage Citytrust's loan portfolio and lending activities;" (2) each director/defendant was grossly negligent in acting or failing to act and would be required to sue himself and his associates; (3) defendants breached their fiduciary duty; (4) the "wrongdoers" dominate the board; (5) Citytrust's indemnity insurance contract would require it to "ignore any demand;" and (6) the challenged conduct constitutes a waste of corporate assets.
Despite their recitation of offenses, the plaintiffs are really offering only conclusory allegations as to the claim of negligence. Moreover, they fail to provide allegations of personal interest or benefit sufficient to waive the demand requirement. As discussed above, receiving normal directors fees does not constitute personal interest. Again, the plaintiffs failed to allege any conflict of interest or self-dealing behavior that would suggest a breach of fiduciary duty. The business judgment rule allows the directors to make even bad business decisions absent bad faith. The plaintiffs have pleaded no facts regarding bad faith.
Despite Citytrust's allegedly improvident lending practices, the plaintiffs failed to show that the board's actions constituted "wrongful conduct," for example, clandestine activity or fraud. Moreover, whether the "wrongdoers" dominated the board depends on whether wrongful conduct was alleged in the first place. Aside from imprudence, however, the plaintiffs failed to allege with particularity that Citytrust's directors behaved fraudulently, were self-dealing, or violated the business judgment rule. The cases cited above clearly demonstrate that demand may not be excused simply by naming the directors as defendants and then allege that they would be required to sue themselves. In addition, it is ingenuous to claim that maintaining insurance was not a valid exercise of business judgment. In Walner v. Friedman, 410 F. Sup. 29, 34 (where, in explaining why director negligence does not render demand futile, the court said "[e]xperience shows that in many cases where the misconduct complained of arguably may in fact constitute negligence . . . the directors or the corporation are insured.").
The early Connecticut cases cited by the plaintiffs do not sustain their claim that this state will excuse demand when the allegation in the action are based on purported gross negligence. CT Page 4445
It is true that the Supreme Court of Connecticut early recognized derivative action by minority stockholders as an appropriate action. Sears v. Hotchkiss, 25 Conn. 170 (1856).
The Connecticut Supreme court has also allowed that demand is excusable when demand is futile. Sheehy v. Barry, 87 Conn. 656,659-60 (1914). "[W]hen the occasion is urgent, and the officers whose willful misconduct has resulted in the continued and continuing waste and destruction of the assets of the corporation are continuing in such course, a court of equity does not compel a minority stockholder to make a demand upon the guilty officers . . ."
However, the plaintiff in Sheehy alleged that suspended officers and board members made an unlawful agreement with the sitting board members to usurp the company's premises and defraud the plaintiff and creditors of the corporation's assets. Thus, the plaintiff alleged that the defendants engaged in unlawful conduct amounting to criminal acts. It does not appear that Sheehy involved gross negligence as the Nobles allege to be the subject of the case presently at bar. Moreover, the exception for fraud and mismanagement was cited by the Sheehy court regarding a prayer for dissolution, not a demand excuse.
The plaintiffs cite Allen v. Curtis, 26 Conn. 456 (1857) as one of the earliest Connecticut cases dealing with shareholders suits against a negligent board of directors. The case, however, does not contain what the plaintiffs would read into it. The allegation in Allen was that the directors of the bank were wasting its assets through fraud and deceit. A demurrer was granted, in part, for failure to make demand: ". . .nor is it alleged that application was made to the corporation or to the directors for leave to make use of the corporate name to obtain redress and that it has been refused." Id, at 462.
In the Shepaug Voting Trust Cases, 60 Conn. 553 (1890), the court allowed a derivative action by plaintiffs who had obtained a majority of the corporation's shares to proceed in a suit against a hold-over board of directors. No demand was required by the court. The allegations in Shepaug were that most of the board had been involved in intentional self-dealing and no claim of gross negligence was made. Shepaug does not contradict the defendants' position that demand has not been excused in Connecticut cases except for allegations of fraud or self-dealing.
The plaintiffs put great emphasis on Joy v. North, 692 F.2d 880
(D.Conn. 1983) for the proposition that there are CT Page 4446 exceptions to the business, judgment rule mandate for demand. The court in Joy held that the rule, whatever its merits, does not apply when "the corporate decision lacks a business purpose. . .is tainted by a conflict of interest. . .is so egregious as to amount to a no-win decision. . .or results from an obvious or prolonged failure to exercise oversight or supervision." Id, at 886.
The court also stated that demand is excused when the directors and officers are defendants, Id, at 889. This statement was dicta so far as it related to the plaintiff's standing, since demand had in fact been made. The assertion goes against the weight of case law cited previously.
The plaintiffs in Joy had in fact made a demand and the issue was whether the Special Litigation Committee established by the board as a response to that demand used proper judgment in deciding not to recommend litigation. Thus, the business judgment rule at issue in Joy was the propriety of the board's decision not to acquiesce in the demand upon the recommendation of its special committee not to pursue litigation.
". . . [W]e hold that the wide discretion afforded directors under the business judgment rule does not apply when a special litigation committee recommends dismissal of a suit." Id. at 889.
The issue as stated by the plaintiffs in the present litigation is whether the board used improper business judgment in running and supervising Citytrust's lending practices so as to excuse demand.
The plaintiffs have called to the court's attention the recent decision of the Second Circuit Court of Appeals in the case of RCM Securities Fund, Inc., et al. v. E. Douglas Stanton, et al., decided March 26, 1991 and have provided the court with a copy of the slip opinion. In that case, the Circuit Court reversed the District Court's dismissal of a derivative action for lack of demand. Applying Delaware law, the Circuit Court held that demand was excused. "Demand is thus excused under Delaware law because the particularized allegations of the complaint create a reasonable doubt as to whether the directors exercised substantive care." Id., at 38.
The case involved the purchase of 96,461 shares of company stock (being 39.2 percent of the outstanding common stock) from the estate of the company's founder (Rhodes) and of an additional 26,800 shares from the estate of another substantial shareholder (Lerner). The board of directors arranged for the purchase of these shares at a substantial premium over market CT Page 4447 and the transfer of the shares to the company's non-contributory Employee Stock Ownership Plan (ESOP) in which top management participated.
To fund the purchase, the directors authorized a loan of $2.55 million and a cash contribution of $175,000 to the ESOP. The loan was financed by a borrowing from a Connecticut bank which was secured by a mortgage on the company's real property. The transaction had the effect of shifting control of the corporation to the ESOP.
The Circuit Court indicated that "[t]he relevant question under Delaware law is `whether what the corporation has received is so inadequate in value that no person of ordinary, sound business judgment would deem it worth that which the corporation had paid.' Grobow, 539 A.2d at 189 (quoting Saxe v. Brady,184 A.2d 602, 610 (Del.Ch. 1962)). We believe the allegations of the amended complaint meet that standard. Although the alleged cost to the Company of the Rhodes/ESOP and Lerner transactions is very substantial, the benefits received by the Company, if any, bear no reasonable relationship to that cost." Id., at 28.
The Court noted the particularized allegations of facts in the amended complaint several times during the opinion. Applying the Aronson test, the court determined that "Delaware law excuses the failure to make a demand when, inter alia, particularized allegations in the complaint raise a reasonable doubt as to whether the directors exercised proper business judgment. Because we conclude that the allegations in the instant complaint suffice to create such a reasonable doubt, we reverse on the appeal." Id., at 3.
The court stated: "The waste issue comes down to whether, giving full measure to all the presumptions favoring the decision of an independent board, the benefits of the expected increase in productivity attendant to the vesting of control in the ESOP bear any reasonable relation to the costs of the transactions in question. We believe that the disproportion between the serious financial weakening of the company and any reasonable expectation of increased productivity is so glaring that the transactions as alleged amounted to a gratuity of one-third of the assets to top management. We know of no presumption that would permit us without more to indulge in the belief that such a loss can be offset by increasing productivity among top management." Id., at 34.
An examination of the particularized factual allegations in RCM Securities Fund, as summarized by the Circuit Court, with the allegations made in the instant complaint can only emphasize the distinction between particularized factual allegations and CT Page 4448 conclusory allegations.
The most persuasive allegation made by the plaintiffs in the present case is that the directors "failed to remain informed as to how Citytrust and its subsidiaries were, in fact, operating and, upon receiving notice or information of an unsafe, imprudent or unsound practice, to make a reasonable investigation therewith and to take steps to correct that condition or practice." Amended Complaint, paragraph 31(e). However, the allegation is patently conclusory and lacking in any supportive particularity adequate to overcome the protection of the business judgment rule so as to justify excusing demand.
The case of Starrels v. First National Bank of Chicago,870 F.2d 1165 (7th Cir, 1989) involved the application of Delaware law (the Aronson analysis) and the particularity required under the Federal Rules of Civil Procedure 23.1. In Starrels the plaintiff brought a derivative suit in which she alleged that the bank board was grossly negligent in making loans (to Nelson Bunker Hunt) and investing in a foreign bank, which she claimed were not the product of proper business judgment and resulted in losses exceeding one million dollars. The Circuit Court, in response to assertions that many of these transactions were made without adequate approval or adequate review of auditing procedures and that the board did not take steps to fully comprehend the financial situation and adequately study the situation before making certain commercial loans, held that "bare conclusory allegations are not enough to cast a doubt on whether these transactions were the products of the directors' business judgement."
So, even under the Aronson analysis, the allegations of negligence in the present suit have not been pleaded with the particularity necessary to overcome the presumptions of the business judgment rule and are therefore not sufficient to excuse demand.
The court finds that the plaintiffs have failed to allege with particularity allegations which, under Connecticut law, would excuse them from making demand on the board to initiate this litigation, a condition precedent to the plaintiffs' standing to maintain a derivative suit on behalf Citytrust.
The motion to strike the amended complaint is granted.
NIGRO, J.